# THAW *v.* RITCHIE.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 264. Argued April 15, 16, 1890. — Decided May 23, 1890.

Under the statute of Maryland of 1798, c. 101, sub-ch. 12, § 10, the orphans' court of the District of Columbia had authority to order a sale by a guardian of real estate of his infant wards for their maintenance and education, provided that before the sale its order was approved by the Circuit Court of the United States sitting in chancery.

The statute of Maryland of 1798, c. 101, sub-ch. 12, § 10, is not repealed by the act of Congress of March 3, 1843, c. 87.

The authority of the orphans' court of the District of Columbia under the statute of Maryland of 1798, c. 101, sub-ch. 12, § 10, to order a sale of an infant's real estate for his maintenance and education is not restricted to legal estates, or to estates in possession.

A testator devised all his real and personal estate to his widow for life, in trust for the equal benefit of herself and their two children or the survivors of them; and devised all the property, remaining at the death of the widow, to the children or the survivor of them in fee; and if both children should die before the widow, devised all the property to her in fee. *Held,* that the widow took the legal estate in the real property for her life; that she and the children took the equitable estate therein for her life in equal shares; and that the children took vested remainders in fee, subject to be divested by their dying before the widow.

The minute book of a court of chancery is competent and conclusive evidence of its doings, in the absence of an extended record.

Real estate devised to the testator's widow for life for the equal benefit of

herself and their two infant children, and devised over in fee to the children after the death of the widow, and to her if she survived them, was ordered by the orphans' court of the District of Columbia, with the approval of the Circuit Court of the United States sitting in chancery, to be sold, upon the petition of the widow and guardian, alleging that the testator's property was insufficient to support her and the children, and praying for a sale of the real estate for the purpose of relieving her immediate wants and for the support and education of the children. *Held,* that the order of sale, so far as it concerned the infants' interests in the real estate, was valid under the statute of Maryland of 1798, c. 101, sub-ch. 12, § 10.

An order of the orphans' court of the District of Columbia, approved by the Circuit Court of the United States sitting in chancery, under the statute of Maryland of 1798, c. 101, sub-ch. 12, § 10, for the sale by a guardian of real estate of his infant wards for their maintenance and education, cannot be collaterally impeached for want of notice to the infants, or of a record of the evidence on which either court proceeded, or of an accounting by the guardian for the proceeds of the sale.

Tнis was an action of ejectment, brought December 12, 1882, by Columbus Thaw against Maria Ritchie to recover possession of an undivided half of lots 1 and 4 in square 160 in the city of Washington.

At the trial, on the general issue, before Chief Justice Cartter, the plaintiff introduced evidence that his father, Joseph Thaw, died in 1840, seized and possessed of these lots under a title derived from the United States, and leaving a will, dated February 26, 1840, and duly admitted to probate in the same year, which (omitting the formal commencement and conclusion) was as follows:

"Imprimis. I hereby appoint and constitute my beloved wife, Eliza Van Tyler Thaw, to be the guardian of my two youngest children, to wit, my daughter, Columbia Thaw, and my son, Columbus Thaw, and to act in trust for them in all things as fully as I would do if living.

"Item. I give and bequeath to my said beloved wife Eliza all my property of every description, real and personal, to hold and enjoy during her natural life, in trust for the equal benefit and maintenance of herself and of my daughter Columbia and of my son Columbus, the two children above named; and if either of them shall die before arriving at the age of majority, then she is to hold the whole property as above for

the equal benefit of herself and the survivor of the two above-named children; or if both of the said children shall die before their mother, my said wife, then she, my said wife Eliza, shall hold the said property during her natural life for her sole own use and benefit; and in no case shall she, my beloved wife Eliza, be deprived of the use of any part thereof during her natural life for the maintenance of herself and of the two children aforesaid, while they, or of either, while either of them shall live, or of herself, while she shall survive them both.

"Item. I give and bequeath to my two children above named, Columbia and Columbus, in equal parts, to their heirs and assigns forever, all my estate, real and personal, that shall remain at and after the death of their mother, my said wife Eliza; or if either of them shall not survive their mother, then I will that the surviving one shall have the whole.

"Item. If both of my said children shall die before their mother, then, on the demise of the last survivor of them, I give and bequeath to my beloved wife Eliza, to her heirs and assigns forever, for her own proper benefit, all my estate of every description.

"I do moreover hereby constitute and appoint my beloved wife, Eliza Van Tyler Thaw, above named, the sole executrix of this my last will and testament, and authorize her to administer and execute the same without giving security in any way whatever."

The plaintiff also introduced evidence tending to show that his mother, Eliza V. Thaw, died in February, 1866; and, for the purpose of showing a severance of the joint tenancy claimed to have existed between himself and his sister Columbia Thaw in these lots, put in evidence a deed, dated May 16, 1848, from his sister and one Henry Walker of their interest in these lots to Agricol Favier; a deed, dated October 22, 1874, from a trustee appointed in a suit in equity for the partition of Favier's real estate. after his death, purporting to convey the whole of these lots to one Ingersoll; a deed of the lots, dated May 24, 1878, from Ingersoll to Mary J. France; and the will of Mrs. France, admitted to probate in January, 1881, devising all her real estate to the defendant.

It was admitted that the real estate sought to be recovered was worth more than $12,000 ; and that the defendant was in possession thereof, claiming title adversely to the plaintiff.

The defendant claimed title under a deed of the two lots to Favier from Eliza V. Thaw, dated March 17, 1848, purporting to be executed pursuant to an order of sale made upon her petition by the orphans' court for the county of Washington in the District of Columbia, and approved by the Circuit Court of the United States of the District of Columbia, sitting as a court of chancery. In support of this defence, the defendant offered in evidence, and the court admitted, against the objection and exception of the plaintiff, the following matters :

(1) From the office of the Supreme Court of the District of Columbia, a book, entitled "Chancery Rules No. 4," of its predecessor, the Circuit Court of the United States of the District of Columbia, containing this entry :

" No. 344. Eliza V. Thaw, guardian to Columbus and Columbia Thaw, infant children of Jos. Thaw, dec'd.  Petition, exhibit, decree of orphans' court.    1844, Oct. 12. — Decree affirming decree of orphans' court."

(2) From the same office, the only paper on file there in said case No. 344, certified by E. N. Roach, register of wills, under date of April 29, 1844, to be " a true copy from an original filed and recorded in the office of the register of wills for Washington County aforesaid ; " and consisting of a petition addressed to the judge of the orphans' court for that county, dated March 29, 1844, signed by Eliza V. Thaw, and having annexed to it a certificate of a justice of the peace to her oath that " the facts contained in the within petition are true to the best of her knowledge and belief ; " together with the order of the orphans' court thereon ; which petition and order were as follows :

" To the Hon. N. P. Causin, judge of the orphans' court of Washington County :

" The petition of the subscriber respectfully represents that she has paid all the debts due by her deceased husband, Joseph Thaw, and that the property left by the deceased is insufficient to support her and the children provided for in the

will of the deceased; and a portion of the estate belonging to the deceased consists of two vacant and unimproved lots of ground situate, lying and being in the city of Washington, in the District of Columbia, to wit, lots numbers one and four in square number one hundred and sixty. Your petitioner respectfully prays that the court will deem it expedient and cause the said lots to be sold for the purpose of relieving the immediate wants of the petitioner and for the support and education of the children named in the will of the said Joseph Thaw, deceased, and that an order may be granted for the sale thereof at an early a day as practicable; and, as in duty bound, will ever pray, etc.

"29th March, 1844. ELIZA V. THAW."

" Orphans' Court of Washington, D.C.

" In the Case of the Petition of Eliza V. Thaw, Executrix and Guardian to Columbia and Columbus Thaw, Minor Children of Joseph Thaw, deceased.

"This case coming on to be heard in the orphans' court on the petition, exhibits, accompanying proofs and representation of said Eliza V. Thaw in her capacity as guardian and executrix aforesaid, the same were by the court read and duly considered; and thereupon it is by the said court, this 29th day of March, 1844, ordered, adjudged and decreed, provided that the Circuit Court of the District of Columbia for the county of Washington, sitting as a court of chancery, shall by its proper order in the premises approve thereof, that the said guardian, for the petitioner's minor children of said Joseph Thaw and herself, be and she is hereby authorized and empowered to sell the said real estate mentioned in said petition, at public or private sale, after such notice by advertisement as she shall deem reasonable and sufficient, on the following terms, viz., either for cash or on credit, at the option of the said guardian; and on the full payment of the purchase-money and interest, and on the ratification of the sale by this court, to execute to the purchaser, his heirs or assigns, at his or their cost and request, a valid and sufficient deed of conveyance in fee simple of the said premises, with all the right and estate therein of the said

Columbia and Columbus Thaw, minor children aforesaid; provided that the said guardian, before proceeding to act hereunder, shall file with the register of wills her bond, with security, to be approved by the judge of this court, in the penalty of seven hundred and fifty dollars, with the usual condition for the due and faithful performance of the trust reposed in her as guardian of said children, and immediately after making said sale to report the same under oath to this court.

"NATH'L POPE CAUSIN."

(3) Certified copies of two bonds, each executed by Eliza V. Thaw as principal, and Henry Walker and John Walker, as sureties, to the United States.

One of these bonds, dated March 22, 1844, was in the penal sum of $725, and upon the condition that if "the above-bounden Eliza Van Tyler Thaw, as guardian to Columbia and Columbus Thaw, orphans of Joseph Thaw, of Washington County, deceased, shall faithfully account with the orphans' court of Washington County, as directed by law, for the management of the property and estate of the orphans under her care, and shall also deliver up the said property agreeably to the order of the said court, or the directions of law, and shall in all respects perform the duty of guardian to the said Columbia and Columbus Thaw, according to law, then the above obligation will cease; it shall otherwise remain in full force and virtue in law."

The other bond, dated May 17, 1845, was in the penal sum of $750, and upon this condition: "Whereas Eliza V. Thaw, by a decree of the orphans' court of Washington County aforesaid, and confirmed by an order of the Circuit Court of the District of Columbia for the county of Washington, aforesaid, has been appointed trustee to sell the real estate of the late Joseph Thaw, mentioned in said order, for the support and maintenance of Columbia and Columbus Thaw, minors, as will more fully appear by the said decree, reference being thereto had: Now the condition of the above obligation is such that if the above bounden Eliza V. Thaw do and shall

well and faithfully perform the trust reposed in her as trustee aforesaid by the said decree, or that may be reposed in her by any further decree or order in the premises, then the above obligation to be void; otherwise in full force and virtue in law."

(4) A book of records from the office of the register of wills for the District of Columbia, entitled "Guardians' Docket No. 2," containing numerous entries relating to proceedings of guardians in the orphans' court from 1818 to 1860, but no proceedings of the court relating to the sale of real estate, and the only entry in which relating to Eliza V. Thaw's guardianship was as follows:

"Eliza V. Thaw, guardian to Columbia Thaw and Columbus Thaw, orphans of Jos. Thaw. Bond, March 22, 1844, $725; H'y Walker, Jno. Walker, sureties. Trustee bond, 17 May, 1845, $750; H'y Walker, E. Walker, sureties."

(5) Another book of records from that office, entitled "Liber E. N. R. No. 2. Proceedings 1846 to 1861," the entries in which appeared to be consecutive, and which was the only record in that office of proceedings between those dates relating to sales of real estate, and was made by binding up loose scraps of paper in the handwriting of E. N. Roach, register of wills during those years, previously kept in portfolios; and contained the only record to be found in the office relating to the real estate of Joseph Thaw, namely, among the proceedings of the orphans' court on Friday, January 21, 1848, the following: "Sale of real estate of Jos. Thaw, dec'd, filed. Order of approval filed," or "for," the last word being indistinct and uncertain.

(6) Testimony of the assistant clerk of the Supreme Court of the District of Columbia, and of persons who had served or had made searches in the registry of wills, that there was great confusion in the records, both of the Circuit Court of the United States of the District of Columbia, and of the orphans' court, before the organization of the Supreme Court of the District of Columbia in 1863 under the act of March 3, 1863, c. 91. 12 Stat. 762.

(7) Docket entries in a great number of other cases on the

chancery side of the Circuit Court of the United States of the District of Columbia before and after October 12, 1844, and between 1823 and 1863, and on the equity side of the Supreme Court of the District of Columbia between 1863 and July 8, 1865, showing that the practice and forms of proceeding in such cases during those periods were similar to the practice in said case No. 344; and also many later cases in the orphans' court before 1881, in which the practice and forms of proceeding were similar.

(8) The deed executed by Eliza V. Thaw to Agricol Favier, dated and acknowledged March 17, 1848, and recorded March 7, 1867, containing this recital:

"Whereas a decree was passed on the twenty-ninth day of March in the year one thousand eight hundred and forty-four, by the orphans' court for the county of Washington in the District of Columbia, upon the petition of Eliza V. Thaw, guardian of her infant children, Columbus and Columbia Thaw; and whereas the said Eliza V. Thaw was thereby appointed a trustee to sell lots numbered one and four in square one hundred and sixty in the city of Washington; which decree was on the twelfth day of October in the year one thousand eight hundred and forty-four confirmed by the Circuit Court for the county of Washington, sitting as a court of chancery; and the said Eliza Thaw having, in conformity with said decree, filed a bond with sureties, which was approved by the said orphans' court; and having, in like conformity with said decree, sold said lots above mentioned, and reported the same to said court, which report was by said court, on the twenty-first day of January in the year one thousand eight hundred and forty-eight, duly approved, ratified and confirmed; and whereas the said Agricol Favier was the purchaser of said lots from her, the said Eliza V. Thaw, the trustee as aforesaid, under the power vested in her by the said decree."

By the terms of this deed, "the said Eliza V. Thaw, for and in consideration of the sum of ————, lawful money of the United States, to her in hand paid by the said Agricol Favier at or before the sealing and delivery of these presents, the re-

ceipt whereof is hereby acknowledged," conveyed to Agricol Favier, in fee, these two lots, "and all the estate, right, title, interest, claim and demand whatsoever, legal and equitable, of her, the said Eliza V. Thaw, as guardian and trustee as aforesaid, and as well as in her own right as of the said infant children, Columbus and Columbia Thaw, to the same."

(9) A deed of partition of other lands between the plaintiff and his sister Columbia, dated March 1, 1871, which recited that "their said mother, after disposing of the real estate acquired by said will, and investing the proceeds thereof in other real estate," died intestate.

The plaintiff requested the court to instruct the jury as follows:

"1st. Under Joseph Thaw's will, during the life of Mrs. Thaw, his widow, she held the legal title to the real estate devised thereby for her life, in trust for herself and the two children, Columbia and Columbus, according to the terms prescribed in the will. The interest which Columbus Thaw took in the real estate under his father's will during the life of his mother was a remainder in fee after the termination of her life, and was not an estate in possession until after the death of his mother. The orphans' court had no power during Mrs. Thaw's life to decree the sale of the estate in remainder of Columbus Thaw. Her deed, therefore, purporting to convey said estate is void,

"2d. The Maryland act of 1798, chapter 101, sub-chapter 12, § 10, did not apply to remainders; and such estates of infants were not subject to sale on petition of the guardian to the orphans' court, with the approval of the Court of Chancery, as provided in said act.

"3d. The alleged entry in the records of the orphans' court, purporting to be of the date of January 21, 1848, in these words: 'Sale of real estate of Jos. Shaw, dec'd filed. Order of approval for,' is indefinite, uncertain and insufficient to authorize Mrs. Thaw's deed; inasmuch as it does not state what sale, or what real estate was sold, nor by whom, to whom or for what consideration the sale was made; and inasmuch as no report of sale is shown, and no guardian's account, and no

record evidence of any payment whatever, and the deed itself does not recite any consideration.

"4th. The act of Congress of March 3, 1843, entitled 'An act to provide in certain cases for the sale of the real estate of infants within the District of Columbia,' repealed the Maryland act of 1798, so far as concerned the sale of the real estate of infants; and since that act of Congress was passed, the real estate of infants could only be sold upon a bill filed therefor as prescribed by said act of Congress; and, as no such bill was filed in reference to the real estate in question, the deed of Eliza V. Thaw to Agricol Favier did not convey the interest of Columbus Thaw therein.

"5th. The orphans' court of the District of Columbia, at the date of the proceedings therein relating to the sale of the real estate by Eliza V. Thaw, guardian, was one of limited jurisdiction; and a party claiming title to real estate under its proceedings must show affirmatively that it had jurisdiction; and that not having been shown in this case, the deed from Mrs. Thaw to Agricol Favier did not convey the interest of the plaintiff in the real estate in question."

But the court refused so to instruct the jury, and directed a verdict for the defendant; a verdict and judgment were rendered accordingly; and the plaintiff excepted to the refusal and direction.

The court in general term, Justices Hagner and James sitting, reversed the judgment, for the reasons stated in an opinion delivered by Mr. Justice Hagner, and reported in 4 Mackey, 347, 358–390. Upon the defendant's petition, a reargument was ordered before the whole court, and the original judgment was affirmed, for the reasons stated in the opinion delivered by Mr. Justice Cox, and reported in 5 Mackey, 200–228, Mr. Justice Hagner dissenting. The plaintiff sued out this writ of error.

*Mr. F. P. Stanton* and *Mr. S. R. Bond* for plaintiff in error.

The principal questions for consideration are:

*First.* Did the Maryland act of 1798 give jurisdiction to

the orphans' court, with the approval of its order by the late Circuit Court, to decree the sale of real estate of infants?

*Second.* If such jurisdiction was conferred by said act, was it in force in this District at the date of the alleged decree and sale, or was it repealed or superseded by the act of Congress of March 3, 1843, entitled "An act to provide in certain cases for the sale of real estate of infants within the District of Columbia?"

*Third.* Assuming that the act of 1798 conferred upon the orphans' court the power to decree the sale of an infant's real estate under its provisions, does the record in this case show that it acquired jurisdiction for that purpose and that the alleged sale was legally made?

*Fourth.* Was the infant's interest in the property in question real estate in such a sense as to be the subject of such a sale?

I. The Maryland act of 1798, c. 101, sub-chapter 12, provides, in § 6, that every guardian appointed by the court having the care of real estate, shall, within three months after executing his bond, procure the said estate to be viewed and reported on by two skilful, discreet persons, not related to either party, and appointed by the orphans' court, who shall take an oath to appraise the same without favor or prejudice, and shall estimate the annual value thereof, and set down what improvements, etc., are on the land, and their condition, etc., and shall make a certificate of all they have done, and the same shall be returned by the guardian to the orphans' court within three months.

Section 7 provides that "No guardian shall commit waste on the land; but the court may, on his application, allow him to cut down and sell wood and account for the same, in case it shall deem the same advantageous or necessary for the ward's education and maintenance."

Section 8 provides that the guardian shall either cultivate or lease such real estate, or may with the court's approbation, undertake the estate on his own account and be answerable for the annual value.

Section 9 provides that the guardian shall account for all profit and increase of the estate, etc.

Section 10 is as follows:

" And once in each year, or oftener if required, a guardian shall settle an account of his trust with the orphans' court; and the said court shall ascertain, at discretion, the amount of the sum to be annually expended in the maintenance and education of the orphan, regard being had to the future situation, prospects and destination of the ward; and the said court, if it shall deem it advantageous to the ward, may allow the guardian to exceed the income of the estate, and to make use of his principal, and to sell part of the same, under its order: Provided, nevertheless, That no part of the real estate shall, on account of such maintenance or education, be diminished without the approbation of the Court of Chancery or General Court, as well as of the orphan's court."

This proviso is claimed by the counsel for the defendant to confer upon the orphans' court plenary power, upon the *ex parte* petition of the guardian, without bill or citation of any kind to the infant, to pass a decree for the sale of his real estate upon an *ex parte* ratification of the decree by the late Circuit Court, and this in the face of the express provision in the same act establishing the orphans' court, "that the said orphans' court shall not, under any pretext of incidental power, or constructive authority, exercise any jurisdiction whatever not expressly given by this or some other law."

We deny the correctness of this interpretation. Looking at the specific and guarded provisions of that act to protect the rights of an infant in respect to his personalty and to his slightest interest in the realty, such as the cutting and selling wood therefrom, or its careless cultivation even, it is beyond reason and belief that the same legislative body should, in the same act, have intended to confer upon the orphans' court, to which it positively prohibited the exercise of any incidental or constructive jurisdiction, authority to sell the infant's realty, including timber and improvements, without the slightest direction as to the manner of sale or the proceedings by which the same was to be effected.

The authority, if any, must be expressly conferred. Where are the words found which give any such express grant of

power? The brief proviso, negative in its terms, "that no part of the real estate shall, on account of such maintenance and education, be *diminished* without the approbation of the Court of Chancery or General Court, as well as of the orphans' court," is the sole expression in the law upon which our opponents rely as the grant of such power. The words *sell* or *sold* do not occur in it. If it was intended to confer the power to *sell* real estate it would have said so, as nothing was to be taken by implication. The acts of Congress of 1843, 5 Stat. 621, c. 87, and 1856, 11 Stat. 118, c. 163 (Rev. Stat. D. C. §§ 968, 973), relating to the sale of real estate of infants, etc., explicitly treat the proceeds of such sale as real estate standing in the place of that which was sold.

In the Maryland system of jurisprudence at that time there was no necessity to confer such power upon the orphans' court, nor could any exigency arise wherein the interest of infants could demand its exercise; for whenever there was a proper occasion for the sale of the realty, the guardian could procure such sale through the more guarded and appropriate proceedings of a Court of Chancery.

The courts of Maryland have maintained the jurisdiction of the Court of Chancery of that State, independent of statute, to decree the sale of an infant's real estate upon a proper showing, and through proper proceedings. In *Corrie's Case*, 2 Bland, 488, Chancellor Bland says it has always been admitted that the Chancellor of Maryland was invested with all the powers in relation to infants with which the Chancellor of England had been clothed. To the same effect are *Dorsey v. Gilbert*, 11 G. & J. 87; *Downin v. Sprecher*, 35 Maryland, 474; *Long v. Long*, 62 Maryland, 33; *Taylor v. Peabody Heights Co.*, 65 Maryland, 388.

The office of that proviso was this; *after* a sale through a Court of Chancery, to authorize the application of the proceeds of the sale, by the concurrent action of the Court of Chancery and the orphans' court, to such maintenance and education. In this way the act supplied a seeming defect in the then existing law whenever a case should arise where the infant's personal estate was insufficient for his support and education;

but the instances are numerous which show with what caution the realty was allowed to be encroached upon, especially as its possession was a qualification to vote or to hold office; and until the act of 1785, c. 80, § 9, authorized the guardian to apply a tenth part of his ward's personal estate, annually, for his education, no part of the principal of the personalty could be so used. The orphans' courts were generally presided over by laymen presumably unqualified to supervise, especially without specific statutory directions, the often complicated proceedings, as practised in a Court of Chancery, for the sale of real estate and the protection of all the rights and interests involved. There are numerous Maryland decisions showing how jealously the orphans' court was excluded from control over, or interference with, real estate. *Stewart* v. *Patterson*, 8 Gill, 46; *Hayden* v. *Burch*, 9 Gill, 79.

It is argued, in avoidance of the fact that the practice pursued in this case was never adopted in Maryland, that after the organization of the courts in the District of Columbia they were not bound to follow the Maryland courts in their construction of the act in question. We do not deny that the District judiciary is independent of that of Maryland. We only maintain that the adjudications and practice in the State where the act was originally passed, and where it remained in force, certainly until 1816, and from which it was, in 1801, adopted as the law of this District, are most persuasive, if not conclusive, arguments in favor of the construction which they have placed upon the act. *Metropolitan Railroad* v. *Moore*, 121 U. S. 558.

We deem it wholly irrelevant to the argument what may have been the opinion or practice upon this question in any other jurisdiction than that of Maryland, as the only point in the argument is to shed light upon the intention of the legislative body which passed the act under consideration, and that intention must be judged by the occasion supposed then and there to exist for its passage.

Before closing this point of our argument we would call attention to section 16 of sub-chapter 12 of the act of 1798, which provides that "nothing in this act contained shall be

construed to affect the general superintending power exercised by the Court of Chancery with respect to trusts." As will appear when we come to comment upon the will of Joseph Thaw, the estate with which the orphans' court attempted to deal in this case, was a trust estate during the life of Mr. Thaw, and therefore came within the inhibition above quoted.'

II. As to the effect of the act of Congress approved March 3, 1843, entitled "An act to provide in certain cases for the sale of real estate of infants within the District of Columbia." 5 Stat. 621, c. 87; incorporated in Rev. Stat. D. C. § 957. This act was passed more than a year before the proceedings were instituted by Mrs. Thaw which resulted in the alleged sale, and about four years before the sale is supposed to have taken place, no date of sale anywhere appearing. It was in full force at that time, and we confidently claim that it superseded any authority that can possibly be held to have been granted by the act of 1798 to the orphans' court to decree the sale of the real estate in question, and furnished the course of proceeding necessary to be pursued to accomplish that purpose.

There is no exigency supposed to be provided for by the former act that is not included in the later one, which is broader in its scope, more definite in its provisions and ample in every way to accomplish, by a better and safer method, everything that can possibly be contemplated by the former. On well-settled principles of statutory construction, the former law, so far as it related to the subject-matter covered by the latter, was superseded and repealed by it. *United States* v. *Tynen*, 11 Wall. 88; *Claflin* v. *United States*, 97 U. S. 46.

A similar act was passed in Maryland in 1816, and amended by act of 1818 providing for the sale of a part or the whole of an infant's real estate through the guarded proceedings of a Court of Chancery whenever it shall appear to the court, after hearing and examination, etc., "that it will be for the interest and advantage of the infant" to sell the same, and proceedings for the sale of infant's realty in that State have ever since been required by its courts to conform to the provisions of that law, though, like the act of 1843, it contains no repealing clause, and its title is to authorize the sale in "cases

therein mentioned," as that of the act of 1843 is to authorize it in "certain cases." *Hunter* v. *Hatten*, 4 Gill, 115 ; *S. C.* 45 Am. Dec. 117; *Williams's Case*, 3 Bland's Ch. 186, 203, 204.

In closing this point we will add that the practice in this District has now come into conformity with what we claim to be the only practice for the sale of an infant's real estate which has any legal warrant, as is shown by the list of cases filed by us and made part of the record and by a comparison of the numbers and dates of those cases with those of the list filed by the defendant; and we do not think that a practising attorney would now ask, or the court grant, an order of sale upon proceedings similar to those pursued in this case; yet what is the law now, in that respect, was the law in 1844 and 1848, when the proceedings relied upon by the defendant were instituted and prosecuted.

III. Whatever construction may be placed upon the acts of 1798 and 1843, we contend that the record totally fails to show jurisdictional facts sufficient to empower the orphans' court to divest the plaintiff in error, then an infant, of his interest in the property in question.

The proceedings in the orphans' court and in the Circuit Court of the District consist only of brief docket entries and of the certified copy of a petition in the former court by Mrs. Thaw, not even describing herself as guardian, with a decree thereon, exhibited in the Circuit Court, and there, without any other pleadings or parties, summarily approved. The record of these doings is meagre, informal and deficient. We are well aware that, in courts whose jurisdiction is not questioned, such deficiencies are overlooked and often supplied by intendment and presumption. The authorities quoted to show what great informalities in such cases are disregarded, we do not answer, because we do not dispute them.

But we claim that the orphans' court, at the time of these proceedings, was an "inferior court," in that sense which required everything necessary to give jurisdiction to be shown in its record.

It is expressly made so by the act establishing it, which provides that "the said orphans' court shall not, under pretext of

incidental power, or constructive authority, exercise any jurisdiction whatever not expressly given by this or some other law."

Among the numerous decisions showing with what strictness this principle has been enforced, we cite the following: *Scott* v. *Burch*, 6 H. & J. 67; *Townshend* v. *Brooke*, 9 Gill, 90; *Conner* v. *Ogle*, 4 Maryland Ch. 425; *Lowe* v. *Lowe*, 6 Maryland, 347; *Yeaton* v. *Lynn*, 5 Pet. 224, 230.

Referring back to the provisions of the act of 1798, as given under point I of this brief, we see with what specific safeguards the real estate of an infant is surrounded by sections 6, 7, 8 and 9. Then when we come to section 10, under which the alleged sale in this case is claimed to have been made, we find these safeguards still further maintained. Down to the *proviso*, for which such potency is claimed, this section is one single provision of the law, the several parts of which are separated only by commas and semicolons — in fact, it is one single sentence of which all the clauses are interdependent. It would seem necessary, therefore, that the court should have the account required of the guardian, if not the report of the appraisers as per section 6, in order to know the condition of the estate and to determine the annual sum to be expended for the orphan. The language of the statute makes this a *condition precedent*, and surely it is only a reasonable condition for the sale of an orphan's realty.

The proviso which immediately follows and qualifies the provisions of the act of 1798 commented on above has been construed to authorize the extraordinary proceedings shown in this case, that is to say, a simple petition by Mrs. Thaw, the guardian, though not stating that she is or acts as such, in the orphans' court, and a decree thereon; and a certified copy of this petition and decree exhibited in the Circuit Court and there approved summarily, *ex parte*, eventuating in the docket entry in the chancery rules No. 4, case No. 344, of date October 4, 1844. This is the whole case.

We deny the validity of this interpretation of the law of 1798. The jurisdictional facts must appear on the face of the proceedings; the judgment of a court without jurisdiction is void, and its proceedings must be in accordance with the funda-

mental and well-established principles of practice. Especially
is this so of courts of limited jurisdiction, as we have shown
above. *Bloom* v. *Burdick*, 1 Hill, 130; *S. C.* 37 Am. Dec.
299; *Thatcher* v. *Powell*, 6 Wheat. 119; *Elliott* v. *Peirsol*,
1 Pet. 328; *Bank of the United States* v. *Ritchie*, 8 Pet. 128;
*Shriver's Lessee* v. *Lynn*, 2 How. 43; *Hickey's Lessee* v. *Stew-
art*, 3 How. 750; *Williamson* v. *Berry*, 8 How. 495; *Windsor*
v. *Mc Veigh*, 93 U. S. 274.

IV. As to the interests of the infants in the property at the
time of the alleged sale.

By the will of Joseph Thaw the widow was invested with a
life estate "*in trust* for the equal benefit and maintenance of
herself and of her daughter Columbia and of her son Colum-
bus." In the same clause it was provided that if either or
both the children should die before the mother, she should
hold the property, *during her natural life, in trust,* for the
equal benefit of herself and the surviving child, and in case of
the death of both children then "for her own sole use and
benefit." This part of the will is explicit in creating a life
estate only, and in raising a *trust* of that estate for the benefit
of all three as long as the mother should live.

Now, at the time of Mrs. Thaw's application to the orphans'
court in 1844, this trust estate for her life was in existence,
separate and distinct from the remainder in fee. If the prop-
erty was sold under the decree of that court this trust was
included and disposed of by Mrs. Thaw's deed. But if any
thing in this case be certain and undeniable, it is that the
orphans' court was wholly without any jurisdiction over trust
estates. Maryland act of 1798, c. 101, sub-ch. 12, sec. 16.
We think this point decisive of the whole case.

That clause of the will which gives to the two chil-
dren, and to their heirs and assigns, all the estate real and
personal, that shall remain after the death of the mother,
would undoubtedly have given the children a *vested* remain-
der in fee, if that had been all. But this clause is followed
by another, which says, "if both of my said children shall
die before their mother, then, on the demise of the last sur-
vivor of them, I give and bequeath to my beloved wife,

Eliza, to her heirs and assigns forever, for her own proper benefit, all my estate of every description." Be it observed, that this last clause does not devise the property to the mother in the event of the children dying *without issue*, but simply on the condition of their dying before her. If both had married and had children and then died before the mother, we presume the last clause of the will would have prevailed, and the mother would have taken the estate. Did she not have an interest in remainder by virtue of this last clause giving the estate to her and her heirs, an event quite possible to happen? If the estate in remainder might take effect in her, it could not have been vested at the same time in the children. Powell on Devises, Vol. I, 206, and Vol. II, cxiii.

As contingent remainders are not subject to sale or conveyance, it matters not that here both parties to this double contingency are claimed to have united in the deed.

*Mr. George F. Appleby* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

In the consideration and decision of this case, we have been greatly aided by the able and exhaustive opinions delivered in the court below.

The principal question is whether the orphans' court, with the approval of the Circuit Court of the United States of the District of Columbia sitting in chancery, had jurisdiction to order the sale of real estate of infants for their maintenance and education.

It may be assumed that in Maryland before 1798 the orphans' court had no authority to order a sale of a ward's real estate for any purpose; although the Court of Chancery was empowered by statute to direct a sale of an infant's land for the purpose of making partition, and perhaps had inherent authority to order a sale of an infant's real estate for his support and education. Maryland Stats. 1715, c. 39, §§ 9, 33, and 1758, c. 4, Bacon's Laws of Maryland; February, 1777, c.

8, 1 Kilty's Laws; 1785, c. 72, § 12, and c. 80, § 9, and 1798, c. 101, 2 Kilty's Laws; 4 Mackey, 361, 368; 5 Mackey, 202-206.

The earliest statute of Maryland, which authorized a sale by a guardian of the principal of the personal property of his ward, was the statute of 1785, c. 80, § 9, by which, after providing that a guardian should not profit by any increase or lose by any decrease "of the estate of the minor under the care of such guardian," and should annually settle an account "of such estate" with the orphans' court, in which "the increase and profits of the estate" should be accounted for, or the loss or decrease thereof allowed, and he should be allowed by the court a commission "upon the whole annual produce of such estate" for managing "such estate," it was further enacted as follows: "And in case the produce of the estate is not sufficient to maintain and educate the minor in a proper manner, and it shall appear to the orphans' court aforesaid that it will be for the benefit and advantage of the orphan to apply some part of the principal of the personal estate to which he shall be entitled towards his education, it shall and may be lawful for the said court to allow the guardian to apply a part of the principal of such personal estate, not exceeding one tenth part thereof annually, to the purpose aforesaid."

The Maryland statute of 1798, c. 101, which is understood to have been drawn up by Chancellor Hanson at the request of the legislature of Maryland, is entitled "An act for amending, and reducing into system, the laws and regulations concerning last wills and testaments, the duties of executors, administrators and guardians, and the rights of orphans and other representatives of deceased persons," and is divided into several sub-chapters, the twelfth of which relates to guardians and wards, and contains the following provisions:

By § 1, whenever a male under the age of twenty-one years, or a female under the age of sixteen, entitled to land by descent or devise, or to personal property of a deceased person by way of distributive share, or of legacy or bequest, shall not have a natural guardian, or a guardian appointed by last

will, "the orphans' court of the county where the land lies, or in which administration of the personal estate is granted, shall have power to appoint a guardian to such infant."

By § 5, on the guardian's executing his bond, the orphans' court shall have power to order "the land, distributive share or other property" of the ward to be delivered to the guardian.

By § 6, "every guardian appointed by the court, having the care of a real estate," shall, within three months, procure an appointment by the orphans' court of appraisers "to examine the estate and estimate the annual value thereof."

By § 7, "no guardian shall commit waste on the land; but the court may, on his application, allow him to cut down and sell wood, and account for the same, in case it shall deem the same advantageous or necessary for the ward's education and maintenance."

By § 8, "each guardian, having a real estate under his care, shall either cultivate the same," "or he shall lease the same from year to year, or for any term not exceeding three years, and within the non-age of the ward; or he may, with the court's approbation, undertake the estate on his own account, and be answerable for the annual value."

By § 9, "every guardian shall account for all profit and increase of the estate, or annual value as aforesaid, and shall not be answerable for any loss or decrease sustained without his fault, to be allowed by the orphans' court."-

Section 10 (upon the construction and effect of which this case turns) is as follows: "And once in each year, or oftener if required, a guardian shall settle an account of his trust with the orphans' court; and the said court shall ascertain, at discretion, the amount of the sum to be annually expended in the maintenance and education of the orphan, regard being had to the future situation, prospects and destination of the ward; and the said court, if it shall deem it advantageous to the ward, may allow the guardian to exceed the income of the estate, and to make use of his principal, and to sell part of the same, under its order: provided, nevertheless, that no part of the real estate shall, on account of such maintenance or education,

be diminished without the approbation of the Court of Chancery, or General Court, as well as of the orphans' court."

By § 11, "on the first account to be rendered by a guardian, he shall state the property by him received from an executor or administrator, or otherwise belonging to his ward, and every increase, and the profits thence arising, if any."

By § 12, "in case the personal property of a ward shall consist of specific articles," "the court, if it shall deem it advantageous for the ward, may at any time pass an order for the sale thereof for ready money, or on credit, the purchaser, with security, giving bond to the said ward, bearing interest."

By § 13, "every account of a guardian shall state his expenditures in maintaining and educating the ward, not exceeding the income of the estate, unless allowed by the court."

By § 15, on the ward's arrival at age, the guardian shall exhibit a final account to the orphans' court, and shall deliver up, agreeably to the court's order, to the ward, "all the property of such ward in his hands."

By § 16, "nothing in this act contained shall be construed to affect the general superintending power exercised by the Court of Chancery with respect to trust."

By § 20 of sub-chapter 15, it is declared that "the said orphans' court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction whatever not expressly given by this act, or some other law."

The statute of Maryland of 1798, by the terms of its final section, took effect on June 1, 1799, and was to continue in force until the end of the year 1801; and it was continued in force in the District of Columbia, and equity jurisdiction was vested in the Circuit Court of the United States of the District, by the act of Congress of February 27, 1801, c. 15, §§ 1, 5. 2 Stat. 105, 106.

On consideration of § 10 of sub-chapter 12 of the statute of 1798, in connection with the other sections of that sub-chapter, and in the light of the previous law of Maryland upon the subject, we concur in the final conclusion of the court below, that the orphans' court, with the approval of the Circuit Court of the United States of the District of Columbia sitting

in chancery, had power to order a sale of the real estate of infant wards for their maintenance and education.

By the terms of that section, the orphans' court, upon settling the guardian's account annually or oftener, "shall ascertain, at discretion, the amount of the sum to be annually expended in the maintenance and education of the orphan, regard being had to the future situation, prospects and destination of the ward; and the said court, if it shall deem it advantageous to the ward, may allow the guardian to exceed the income of the estate and to make use of his principal, and to sell part of the same, under its order: provided, nevertheless, that no part of the real estate shall, on account of such maintenance or education, be diminished without the approbation of the Court of Chancery, or General Court, as well as of the orphans' court."

The orphans' court is thus empowered to allow the guardian, for the suitable maintenance and education of the ward, to exceed "the income of the estate," and to use and sell part of the principal thereof. The words "the estate," in their natural and legal meaning, include the whole property of the ward in the guardian's hands ; and the words "the property," "the estate" and "the income of the estate" are habitually and repeatedly used in that sense, both in other sections (§§ 6, 8, 9, 11, 13, 15) of the same sub-chapter, and in the earlier statute of 1785, c. 80, § 9, as appears in the passages already quoted from each of those statutes. Wherever an authority to sell is intended to be limited to personal property, it is so expressed, as in § 9 of the statutes of 1785, and in § 12 of the statute of 1798. Compared with the express restriction of the authority to sell any part of the principal to "personal estate" in the act of 1785, the omission of any such restriction in the act of 1798 strongly tends to show that it was purposely omitted in the latter act.

This conclusion is confirmed by the proviso "that no part of the real estate shall, on account of such maintenance or education, be diminished without the approbation of the Court of Chancery, or General Court, as well as of the orphans' court." As observed by Mr. Justice Story, speaking for this

court, "the office of a proviso, generally, is either to except
something from the enacting clause, or to qualify or restrain
its generality, or to exclude some possible ground of misinter-
pretation of it, as extending to cases not intended by the legis-
lature to be brought within its purview." *Minis* v. *United
States*, 15 Pet. 423, 445. The insertion of this proviso, there-
fore, manifests the understanding and intention of the legis-
lature that real estate was and should be included in the pre-
ceding general authority to order a sale of part "of the
estate," except so far as qualified by the proviso. Indeed, if
that authority did not include real estate, the proviso would
be superfluous.

The necessary construction of the whole section, including
the proviso, appears to us to be that express authority is
thereby granted to the orphans' court to order a sale of any
part of the ward's estate, real or personal, for his maintenance
and education; but that, before any sale of real estate can be
made for this purpose, the order of the orphans' court shall
be approved by the Court of Chancery or the General Court.
Whether the property to be sold for this purpose is personal
or real, the application is to be made to the orphans' court,
and the order granted by that court in the first instance. In
the case of personal property, no action of any other court is
required. In the case of real estate, the order of sale, after
being passed by the orphans' court, must be presented to and
approved by the Court of Chancery or the General Court;
but no separate suit need be instituted in either of those
courts.

This construction has prevailed in the courts of the State
of Maryland, as well as in those of the District of Columbia.

In *Goltier's Case*, which is reported in 3 Bland, 200, note,
and an authenticated copy of the proceedings in which has
been filed in this case and sent up with the record, a petition
presented in December, 1810, to the orphans' court of Cecil
County in the State of Maryland, by a father and guardian,
alleged that his infant children and wards had become entitled,
in right of their mother, to one-ninth part of a grist mill and
about one hundred and forty acres of land in that county, the

other owners of which, after consulting with the petitioner, had "concluded that a sale of the said mill and lands would be highly advantageous to all the persons interested," and had contracted to sell them to one Alexander Scott for the sum of $6424.25, provided the petitioner should be able to convey his children's part; and that the petitioner believed that such a sale would "much promote the interest and welfare of his said children, and enable him to educate and support them more to their advantage than if no such sale were to be made;" and therefore prayed the orphans' court to "order that he may be able to make the necessary conveyance." On December 12, 1810, the orphans' court, "on due consideration of the allegations contained in the within petition," was "of opinion that the sale prayed for was to the advantage of" the wards, "and should be confirmed, and that the petitioner be authorized to make conveyance of that part of his wards' real estate." In the Court of Chancery, six days afterwards, Chancellor Kilty signed a decree, which in the authenticated copy, quoted in 4 Mackey, 370, is stated as follows: "Under power vested in this court by the act of 1798, c. 101, sub-ch. 12, § 7, the above order of the orphans' court is approved." This decree, as printed in 3 Bland, 200, note, differs only in substituting § 10 for § 7. That it was not made under the act of 1785, c. 72, § 12, is quite clear, because no partition was sought, as well as because the petition was addressed to the orphans' court, and not to the Court of Chancery, in the first instance. *Tilly* v. *Tilly*, 2 Bland, 436, 438 and note. Both versions of the decree agree in stating that it was made under the power vested in the Court of Chancery by the act of 1798, c. 101, sub-chapter 12; and § 7 of that sub-chapter concerns only the cutting and sale of standing wood by authority of the orphans' court, without requiring the approval of any other court. The inference is irresistible, that the insertion of § 7 in the record of the decree was a clerical error, and that the decree was really made, as Chancellor Bland understood it to have been, under § 10, for the better support and education of the wards.

The Court of Appeals of Maryland, in 1828, decided that

the value of buildings constructed on the land of a ward by direction of his guardian, and under order of the orphans' court, at an expense exceeding the income of his estate, real and personal, could not be recovered from the ward, because section 10 of the act of 1798 did not empower the orphans' court to order any part of the principal of the ward's estate to be applied to any other purpose than his support and maintenance. But the court added: "Should an application of the personal estate not suffice to maintain and educate suitably to the future destination of the ward, then such maintenance and education may also induce an application of a part of the real estate, with the approbation of the Court of Chancery or General Court, as well as the orphans'. court." *Brodess* v. *Thompson*, 2 Harris & Gill, 120, 126, 127.

Chancellor Bland, in a case decided in the same year, cited those two cases and expressed a similar opinion. *Williams's Case*, 3 Bland, 186, 199, 200, 207. In 1841 the Court of Appeals said: "According to our laws a guardian cannot encroach on the capital of his ward's estate without the order of the orphans' court, nor can the real estate be diminished but by the approbation of the Court of Chancery." *Hatton* v. *Weems*, 12 Gill & Johns. 83, 108. And it is admitted on all hands, that the Circuit Court of the United States of the District of Columbia, and its successor, the Supreme Court of the District of Columbia, have always interpreted the section in question according to what we now hold to be its true construction and effect. 5 Mackey, 213; 4 Mackey, 383, 386.

It is argued for the plaintiff, that so much of the Maryland act of 1798 as concerned the sale of the real estate of infants has been repealed by the act of Congress of March 3, 1843, c. 87, entitled "An act to provide in certain cases for the sale of the real estate of infants within the District of Columbia," by which it. is enacted that when "the guardian of any infant shall think that the interest of his or her ward will be promoted by the sale of his or her real estate, or any part thereof, it shall be lawful for such guardian" to bring a suit in equity in the Circuit Court of the District of Columbia, in which the infant shall be made a party, and shall be represented by a

guardian *ad litem*, and the facts alleged in the bill, whether admitted or not, shall be proved by disinterested witnesses, and the court, upon being satisfied that "the interest of the infant manifestly requires the sale of his real, estate, or any part thereof," and that "by such sale the rights of others will not be violated," may decree a sale, in which case the proceeds of the sale shall be invested and applied for the benefit of the infant, "either in the purchase of real estate, or in such manner as the court shall think best," and upon his death shall descend as real estate. 5 Stat. 621, 622 ; Rev. Stat. D. C. §§ 957–968.

But this act contains no express repeal of the Maryland act of 1798 ; it does not mention the maintenance or education of infants, but authorizes the sale of their real estate whenever their interest manifestly requires it; its chief purpose evidently is to authorize a change of investment; and it cannot be presumed to have been intended to take away the authority of the orphans' court, when discharging its appropriate duty of ascertaining the amount proper to be expended for an infant's maintenance and education, to order a sale of his real estate for this single object with the approval of the Court of Chancery.

There is nothing in the nature of the interest that these children took under the will of their father, which should prevent a sale of it under the statute of 1798, when necessary for their maintenance and education. That statute is not restricted to legal estates, or to estates in possession. The effect of the testator's dispositions, though obscured by some confusion and superfluity of language, was to give the legal estate in all his land to his widow for life; the equitable and beneficial estate for her life to her and the two children, or the survivors of them, in equal shares; and the legal estate in remainder, after the death of the widow, to the two children, in fee ; with two limitations over in fee, by way of executory devise, (neither of which impaired the precedent estates, or ever took effect,) the one, of the share of a child, dying before the mother, to the surviving child; and the other, of the whole estate to the mother, in case she should survive both

children. The legal estate in remainder in the children, which
nothing but their own death before the determination of the
widow's life estate could prevent from vesting in possession,
vested in them from the death of the testator, subject to be di-
vested by their dying before the widow. *Doe* v. *Considine*,
6 Wall. 458, 476; *McArthur* v. *Scott*, 113 U. S. 340, 379.
Their legal estates in remainder, as well as their equitable
estates for life, were present interests, which might be sold
for their maintenance and education.

The records of the orphans' court, and of the Circuit Court
of the United States of the District of Columbia sitting in
chancery, produced from the proper custody, clearly prove
the following facts: Mrs. Thaw, who by the will of her hus-
band was appointed executrix thereof, and guardian of their
two children, and exempted from giving bond as executrix,
gave bond as guardian on March 24, 1844. On March 29,
1844, she presented to the orphans' court a petition on oath,
representing that she had paid all her husband's debts, and
that the property left by him was insufficient to support her
and the children, and praying for an order of sale of the real
estate for the relief of her immediate wants and for the sup-
port and education of the children. On that petition, the
orphans' court, on the same day, by an order reciting that it
had heard and considered the case " on the petition, exhibits,
accompanying proofs and representation of Eliza V. Thaw in
her capacity of guardian and executrix," decreed that, provided
the Circuit Court of the United States of the District of Co-
lumbia sitting as a Court of Chancery should by proper order
approve thereof, she should be authorized, as guardian of the
children and for herself, to make sale and conveyance of the
said real estate, first giving bond for the performance of
the trust thereby imposed upon her, and immediately after
the sale making report thereof to the court. On or about
April 29, 1844, a copy of that petition and order, duly certi-
fied by the register of wills, was filed on the chancery side of
the Circuit Court of the United States of the District of Co-
lumbia. On October 12, 1844, the order of the orphans' court
was approved by the Circuit Court sitting in chancery, as is

shown by the entry on its docket or minute book, which, in the absence of any extended record, is competent and conclusive proof of its doings. *Philadelphia, Wilmington & Baltimore Railroad* v. *Howard*, 13 How. 307, 331. On May 17, 1845, the petitioner gave bond with sureties for the performance of the trust imposed upon her by the order so approved. The dates of the sale and of the report thereof to the orphans' court do not appear. But it does appear, by the minutes of its proceedings, that on January 21, 1848, there was filed in and approved by that court a "sale of real estate of Joseph Thaw, deceased," which, in the absence of evidence of any other sale of his real estate having been ordered or made, must be inferred to have been a report of this sale. All the facts recited in the deed executed by Mrs. Thaw to Agricol Favier on March 17, 1848, are thus proved by independent evidence, the competency of which is beyond doubt.

The objection that the petition presented by Mrs. Thaw to the orphans' court was irregular and insufficient to support the jurisdiction of that court, because it asked for a sale of the land for the benefit of the petitioner, as well as of her wards, is sufficiently answered by Mr. Justice Cox, delivering the judgment below, as follows: "It is true that the guardian, in her application, confused somewhat her own interests with those of the wards, and alleged the insufficiency of the property to support *herself* and the children as a ground for selling, and asked the sale as well to relieve *her own immediate wants* as for the support of the children. But it is fair to read this part of the application as referring to her own undivided interest for life in the property. It is not to be read as an application to sell the estate of the children for her support. It is also true that the court had no jurisdiction over the wife's interest in the property, and could not pass title to it by its decree. But if the wife chose to unite in the sale and convey her interest, which she must be held to have done, we see no reason why the court could not decree a sale of the share of the infants." "And if there was error in the form of the decree because it embraced the widow's interest also, it did not affect its efficacy as to the interest of the infants, but was a

harmless and inoperative error not to be noticed collaterally. The only question that could arise would be as to the proper apportionment of the proceeds between the mother and the wards. But this question could only arise after the sale, and would not affect the transfer of title." 5 Mackey, 227.

The petition and the order of the orphans' court thereon, fairly and reasonably construed, show that a sale of the infants' interest in the real estate under the will of their father was prayed for and ordered as necessary for their maintenance and education. So far as concerned the interest of the infants, therefore, the court had before it everything that was necessary to support its jurisdiction. In this form of proceeding, the guardian sufficiently and fully represented the infants, and no notice to them was required by the statute of Maryland or by any general rule of law. The want of proof of such notice, or of any record of the evidence on which the orphans' court proceeded in making the order, or the chancery court in approving it, or of any subsequent accounting by the guardian for the proceeds of the sale, is immaterial. The orders of those courts within their jurisdiction were conclusive proof in favor of the purchaser and grantee at the sale, and cannot be collaterally impeached on any such ground. *Thompson* v. *Tolmie*, 2 Pet. 157; *Grignon* v. *Astor*, 2 How. 319; *Comstock* v. *Crawford*, 3 Wall. 396; *McNitt* v. *Turner*, 16 Wall. 352; *Mohr* v. *Manierre*, 101 U. S. 417.

The cases, on which the plaintiff relies, of *Bank of United States* v. *Ritchie*, 8 Pet. 128, and *Hunter* v. *Hatton*, 4 Gill, 115, 124, were wholly different. Both were cases of decrees in equity upon suits *inter partes* in the ordinary form. In the one case, the decree was directly attacked by bill of review, in the nature of a writ of error; and in the other case, a notice required by express statute had not been given.

*Judgment affirmed.*