Mr. Justice Morris
delivered the opinion of the Court:
Four errors are assigned by the appellant, but two of these are merely formal. The substantial questions raised are:
1. Whether the Supreme Court of the District of Columbia, holding a special term of that court for Orphans’ *158 Court business, had power under the law to authorize a guardian to mortgage the real estate of a ward; and
2. Whether the deed of trust executed in this instance was a valid execution of the authority conferred upon the guardian to mortgage the real estate of the infant, if it be assumed that the court had power to confer such authority.
These questions are undoubtedly of very grave importance. For, although, we are informed that the course of procedure which was followed here has now been practically discontinued in consequence of the repeated attacks upon it, yet it is quite apparent that the procedure itself was generally accepted in the community, by the legal profession and by the courts, as proper, and that many titles now depend upon it; and we should certainly hesitate to disturb and unsettle such titles, without very clear demonstration that the procedure was wholly unwarranted in law. A construction of law that has been enunciated by the coui'ts and accepted and acted upon by the community, and which thereby has become a rule of property, should not be lightly overthrown, even though that construction, upon further and fuller consideration in the light of experience, might not commend itself to the judicial mind. The maxim of stare decisis does not imply a mere blind adherence to precedent; it is a guaranty of peace to the community and of stability of acquired rights, which ought not to be divested by a change in the judicial mind. Wright v. Sill, 2 Black, 544; 1 Kent’s Comm., 475 ; Doolittle v. Bryan, 14 How., 563 ; Reed v. Ownby, 44 Mo., 206 ; Douglass v. Pike County, 101 U. S., 677 ; Thaw v. Ritchie, 136 U. S., 519.
One of the cases contained in the list that has already been mentioned, as appended to the agreed statement of facts, is the case of The Estate of Peter Mansell. There, on August 11, 1874, the guardian of a minor petitioned the Orphans’ Court for leave to borrow money on the ward’s estate in order to pay taxes and to meet the pressing necessities of the minor or minors. The Orphans’ Court granted the authority; and the equity court, after first ratifying that action, afterwards *159 for some reason certified the matter to be heard in the General Term in the first instance for the purpose ’of having an authoritative settlement of the doubt which seems then, probably for the first time, to have arisen in regard to the matter. The decision of the General Term ratified the order of the Orphans’ Court, and sustained the jurisdiction of the latter to make the order. That decision became the law of the District of Columbia. The proceedings in all the subsequent cases, including those in the case now before us, were had upon the faith of that decision. The opinion in the case does not seem to have been reported; but the decision is cited by Mr. Justice Cox in the case of Thaw v. Ritchie, 5 Mackey, 200, 213, and is .there reaffirmed; and it is practically reaffirmed again by the Supreme Court of the United States in its decision on appeal in the same case of Thaw v. Ritchie, 136 U. S., 544.
The authority, therefore, of the Orphans’ Court to order the mortgage of the property of a minor for his support or to pay taxes, having thus been solemnly adjudicated and affirmed, it does not seem that we ought now to reopen the question. But even if we were to regard it as an open one, it is not apparent that fhe appellant’s contention is well founded.
In view of the decision of the Supreme Court of the United States in the case just cited of Thaw v. Ritchie, 136 U. S., 519, the power of the Orphans’ Court of this District to order the sale of the real estate of a minor for the purposes heretofore indicated, is beyond cavil. The question now raised is only whether the power to order a sale includes the power to order a mortgage. It is argued here, as it was argued in the case of Thaw v. Ritchie, that the act of Maryland of 1798, Ch. 101, which controls such matters, expressly forbids the enlargement of the powers of the Orphans’ Court by any theory of a constructive grant of authority. The language of the act in that regard is this: “ The said Orphans’ Court shall not, under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever *160 not expressly given by this act or some other law.” Act of 1798, Ch. 101, Subch. 15, Sec. 20. The purpose of the act, in view of the peculiar organization of those courts, is very plain to constitute them merely courts of special and limited jurisdiction, to restrict them within the limits of express statutory regulation, and to refuse to them the general authority inherent, by virtue of their creation, in courts of general jurisdiction. In numerous cases, both in Maryland and in the District of Columbia, this limitation has been affirmed, and the words of the statute itself, are too plain for any misconstruction of the meaning of the Legislature in its enactment. And yet it required construction and discussion and much litigation, to establish what was finally established in the case of Thaw v. Ritchie, the authority of the Orphans’ Court to order a sale.
The denial to the Orphans’ Court of incidental power or constructive authority does not mean the denial of such authority as is necessarily implied in that which is expressly granted. “ Incidental,” in this connection, is defined by Webster to mean casual, accessory or collateral — -in other words, something additional. Incidental power is therefore accessory or additional power — coúnected, it is true, with the main subject, and yet additional. The word “ constructive ” is defined by the same author to be “ derivative,” “ inferential.” .Constructive authority would be authority assumed to have been given because some other antecedent authority had been given. Neither of these terms is antagonistic to the theory of the existence of authority necessarily included in that which is specifically mentioned. The power to summon witnesses implies the power to administer oaths; the power to take and approve bonds implies the power to inquire into the sufficiency of sureties; and the power to hear a cause implies the power to direct and control the order of argument. These are self-evident conclusions; but they serve to show that, in the effort to give due effect to the purpose and intention of the Legislature, we should not unreasonably strain the meaning of words or give the law a construction that would defeat its beneficial requirements.
*161 In conferring' upon the Orphans’ Courts the authority which it must now be fully conceded that they possess, to sell the real estate of a ward for a specified purpose, the Legislature had in view the welfare and safety of the ward. Support and maintenance are primary requirements of the law of nature; and a valuable estate would be of no use to the ward if it yielded him no support, and he were permitted to starve before he reached the period, when by his own act, he could convert it into beneficial enjoyment. A sale of the property is authorized by the statute to be made for the support and maintenance, or for the purpose of the payment of the public dues, which are paramount to all private right. If a sufficient sale could be made of some minor estate in the property, such as a life estate, an estate for a limited number of years, or a conditional estate with the right of repurchase, why would not such a sale subserve the purpose of the law, and be within the very letter of the statute? A mortgage is a sale upon condition; therefore most undoubtedly a sale; and no theory of incidental power or constructive authority is required to include it within the letter of the law, as most undoubtedly it is included within its spirit. By a mortgage the estate may be conserved to the ward, and the purpose of support and maintenance accomplished at the same time; while by an absolute sale the estate is in a measure destroyed. So that, if we regard merely the beneficial purposes of the statute, a mortgage would seem to be on general principles more conducive than an absolute sale, to the' best interests of the ward. It is very true that there is danger incidental to a mortgage from which an absolute sale might be comparatively free. But that raises a question for the superintending vigilance of the court, not an argument against the propriety of the proceeding, or the exercise of the jurisdiction. And it may be remarked that, in the present case, there is nothing whatever to show that there was any sacrifice of the ward’s interest, or of the value of the estate, by the proceedings that supervened.
We deem it unnecessary to enter upon any examination of *162 the general question how far the power to sell includes the power of mortgage. íhe general rule is elementary law, that the power to sell includes the power to mortgage, because a mortgage is a sale, although a sale upon condition. But there are cases where a different rule apparently has been held. In all such cases, either by express terms or by necessary implication, the power of sale is limited and its scope defined. Wherever there is such a limitation, it must of course govern and control the action of parties. Powers, it has been said, must be strictly construed; and where a special mode is prescribed for their exercise, no other mode can be allowed. But this principle can have no application to a court, even to a court of the most limited jurisdiction, when, for the beneficial use of the person most interested in it and for the preservation of the life and health of such person, it is authorized to make sale of the estate of that person. Here no limitation is placed upon the mode of the exercise of the power; there is simply a jurisdiction conferred to order a sale; and the terms and mode and all the details of sale are left to the discretion of the court. Indeed, a rigid interpretation of the statute might well lead to the conclusion that a mortgage rather than a sale in fee simple was contemplated by the legislative authority. For the provision of the statute (of Maryland) is of authority to the court “ to allow the guardian to exceed the income of the estate, and to make use of his principal, and to sell part of the same, under its order; provided that no part of the real estate shall, on account of such maintenance or education, be diminished without the approbation of the court of chancery.” (Act of 1798, Ch. 101, Subch. 12, Sec. 10.) This provision is more consistent with a diminution of the estate by a mortgage than with the alienation, and therefore in a measure the practical destruction of it by a deed in fee simple.
We conclude, therefore, that the Orphans’ Court, having power to order a sale of the real estate in this case, subject to ratification of its order by the equity! court, properly exercised that power by ordering a mortgage of the property.
*163 But it is contended, in the second place, that, even if it be conceded that the court had power to direct the execution of a mortgage, yet the authority given to the guardian was not properly exercised in this instance by the execution of a deed of trust such as was here given.
It is argued that a deed '-of trust differs from a mortgage; that the deed of trust in this instance conveyed only the interest of the widow and not the estate of the ward, and that it was improper in any event to convey the property to two strangers, as was done here, to make sale of it in a certain contingency. These and other minor objections that have been suggested rather tend to impeach the regularity of the transaction, which can scarcely be done in a collateral proceeding, than to nullify the conveyance for want of authority to execute it. The deed purports in express terms to be executed in pursuance of the decree of the equity court which ratified the order of the Orphans’ Court allowing the mortgage; and that the signature is rather an illiterate variance from the true name of the party, and that the word “ widow ” is annexed to the signature, ought not to be permitted to militate against the plain intent and purpose of the deed. The deed is*admitted to be the deed of Catherine Middleton; the signature to it is admitted to be her signature; and it is admitted that she executed the deed in assumed compliance with the authority sought to be conferred on her by the Orphans’ Court and the court of equity. The deed, therefore, should be taken to be what upon its face it was intended to be, a deed by the guardian of the ward’s estate to secure a loan by the pledge of that estate. Warner v. Ins. Co., 109 U. S., 357; Dundas v. Hitchcock, 12 How., 272; Patterson v. Wilson, 64 Md., 193 ; Cox v. Chamberlin, 4 Ves. Jr., 637.
Nor is it correct to assert that by any fair construction of the deed, Catherine Middleton conveyed only her own interest in the property, which was merely a dower interest. She expressly conveys the property itself, together with her own interest. It required no authority from, any court for her to convey her dower interest.
*164 There remains, however, the question whether the execution of a deed of trust is a compliance with the authority “ to mortgage the real estate, of said minor.” It is sufficient answer to this that the deed of trust is the only form of mortgage that has been in general use in the District of Columbia for many years. The common law mortgage is practically unknown with us; and every one understands that, when a mortgage of real estate here is spoken of, the deed of trust is what is intended. The petition of Catherine Middleton alleged that it was better to mortgage the property than to sell it, and asked for leave to borrow the money upon deed of trust or mortgage; and the order of court was for leave to mortgage it. The deed of trust is here used as the equivalent of a mortgage; and so the term is universally used by the community. Indeed, while a mortgage is not necessarily perhaps a deed of trust, a deed of trust to secure the loan of money is necessarily a mortgage. This objection, therefore, as well as the others, we are compelled to regard as without foundation.

Upon the whole case, we must regard the judgment of the court below as correct; and so regarding it, we must affirm it, with costs.