## THEODORE CARY *et alii vs.* JOSEPH WARNER.

*Merger of life estate. Title by exclusive occupation.*

In this case—trespass *quare clausum*—both parties deduce title from Ebenezer Warner who, February 3, 1840, conveyed the premises in question to his sons, Joseph and Henry, taking back a life lease from them. Jan. 3, 1842, Henry conveyed his interest to said Joseph, this defendant; and March 28, 1843, their father released his life estate to Joseph. March 2, 1844, one Eells, who had recovered a judgment against Joseph, levied his execution upon the reversion of an undivided half of the premises, and on the seventeenth day of May, 1845, conveyed the rights thus acquired to John Hodgdon, who procured a partition to be made upon his petition, in which the three Warners were named as respondents, and the *locus in quo* was set off to Hodgdon, who conveyed it, April 17, 1850, to Shepherd Cary, by whom (and his heirs, the plaintiffs) the premises were exclusively occupied till the trespass complained of was committed, November 20, 1872, soon after the death of Ebenezer Warner. After Ebenezer Warner had released his life estate to Joseph, but before that release had been recorded, said Ebenezer's life interest was attached and subsequently levied upon by one Cary, who afterwards transferred his claim to Hodgdon, but Cary's suit was based upon the money counts, without specification of the claim to be made under them, and the release was recorded before judgment. The defendant contended that the plaintiffs were lawfully in possession of the *locus in quo*, until the death of Ebenezer Warner, under this levy upon the life estate, and therefore did not hold adversely; but that the levy upon the fee was so defective as to give no title. The court *held* that the life estate was merged by the release of it to Joseph; that the attachment of it by Cary was not such as to keep it alive; and that, whether the levy upon the fee and the proceedings for partition were valid or not, the plaintiffs were entitled to the premises by more than twenty years' peaceable, open, notorious, adverse and exclusive occupation of them, claiming the fee.

ON REPORT.

TRESPASS *quare clausum*, for breaking and entering a lot of land, and a blacksmith's shop thereon, on the bank of the west branch of the Meduxnekeag river in Houlton, and between that stream and the military roads and the road to Porter settlement. The entry was made November 20, 1872, simply for the purpose of asserting title, and it was agreed that if the defendant had not

the legal right to enter, the damages should be assessed at one dollar.

Prior to February 5, 1840, the defendant's father, Ebenezer Warner, had the unquestioned title to this land; upon that day he conveyed it to his sons, Joseph and Henry, who, at the same time, gave him back a life lease. January 3, 1842, Henry conveyed to Joseph the former's half of the property, taking back a mortgage of it, to secure the payment of $1200 in three years with interest. The defendant put in the deed from Henry to Joseph and the plaintiffs put in the mortgage which has never been discharged, so far as the record shows. On the twenty-eighth day of March, 1843, Ebenezer Warner transferred his interest under his life lease to his son Joseph, this defendant. Upon the third day of May, 1845, the real estate of Joseph Warner in Aroostook county was attached upon a writ against him in favor of Seth W. Eells. Execution issued February 27, 1844, upon the judgment recovered in that suit, and it was levied upon land including the *locus in quo* on the second day of the following month, the extent being upon the debtor's reversionary interest in an undivided half of the land described by the appraisers. On the seventeenth day of May, 1845, Dr. Eells transferred to John Hodgdon all rights acquired by this levy. The defendant also put into the case the record of a levy made by said Hodgdon for an execution in his own favor against Ebenezer Warner upon the latter's life interest, but it became apparent, upon comparison of its language with the plan and conveyances in the case, that it did not touch the parcel here in dispute. Mr. Hodgdon subsequently filed a petition for a partition of the land set off to Eells, naming Ebenezer, Joseph and Henry Warner as the parties adversely interested, and the tract set off to him upon these proceedings, April 29, 1847, embraced the *locus in quo*. Upon the seventeenth day of April, 1850, Mr. Hodgdon conveyed the land and title thus obtained to Shepherd Cary, the plaintiff's father, whose property and rights it is admitted that they inherited. Soon after this conveyance, Mr. Shepard Cary moved the blacksmith's shop upon

the land and he and his representatives occupied it without dispute or interruption until the defendant's entry, November 20, 1872, which is the subject of this action.

Ebenezer Warner died November 18, 1872, and the defendant, conceding the plaintiffs right to occupy the premises during the lifetime of said Ebenezer, contended that their interest terminated with his life.

Upon the eighteenth day of April, 1843, one Theodore Cary—not the plaintiff—caused all of Ebenezer Warner's interest in any real estate in Aroostook county to be attached upon a writ of that date, by which he commenced suit against said Ebenezer upon two notes described in his declaration, which also contained the general money counts, without any specification of the claim to be made under them. The transfer of the life lease from Ebenezer Warner to Joseph, though made March 28, 1843, was not recorded till May 31, 1843, subsequently to the attachment attempted to be made April 18, 1843. When Theodore Cary obtained his judgment in this suit, for precisely the amount of the two notes mentioned in his declaration, he levied his execution, March 2, 1844, upon the debtor's life interest aforesaid, assuming that his attachment of it upon the original writ was valid, and subsequently conveyed the title thus acquired to John Hodgdon, February 20, 1846. The defendant relied upon this last named levy to prevent any merger of the life interest in the fee (by both coming to him) and contended that this gave the plaintiffs a right of occupancy during the life of Ebenezer Warner, which prevented him from ousting them and their possession from being adverse to him, or a disseizin of him.

*Madigan & Donworth* and *L. S. Strickland*, for the plaintiffs.

*L. Powers* and *C. M. Powers*, for the defendant.

APPLETON, C. J. Ebenezer Warner, from whom both parties derive their claim of title, upon the fifth day of February, 1840, conveyed the premises in controversy to Henry Warner and

Joseph Warner, who, on the same day, gave back to their grantor a life lease of the premises then conveyed, to hold "during the term of his life."

January 3, 1842, Henry Warner conveyed to the defendant his undivided half of the premises deeded to him February 5, 1840, by Ebenezer Warner.

March 28, 1843, Ebenezer Warner, by deed of that date, bargained, sold, transferred, assigned, conveyed and forever quitclaimed to Joseph Warner, the defendant, all his right, title and interest in the life lease he then held of the premises.

By the last named conveyance the life estate of Ebenezer Warner was merged in the reversion of which the defendant was seized. He thus was the owner of the whole estate in fee. "Merger is the annihilation by act of law of the less in the greater of two vested estates, meeting without any intervening estate, in the same person, in the same right. Thus, for example, when A., tenant for life, with reversion to B. in fee, surrenders his estate to B., or B. releases to A. in fee. By this union A.'s life estate is absorbed in the inheritance; and the consequence is the annihilation of the estate in reversion." 3 Greenl. Cruise, Title 39, §§ 1 and 2. Merger.

In this state of the title Seth W. Eells, having obtained a judgment against the defendant, upon the second day of March, 1844, disregarding the conveyance from Henry Warner, levied upon the reversion in one half of the premises in common and undivided.

On the seventeenth day of May, 1845, Seth W. Eells conveyed the premises embraced in his levy to John Hodgdon, who filed a petition for a partition of the premises, conveyed by Ebenezer Warner to Joseph and Henry Warner, claiming an undivided half part of the same. In this petition Joseph Warner, Henry Warner and Ebenezer Warner were made parties, and due notice given them of the pendency of the petition for partition. No objection being made, partition was ordered, and commissioners appointed, who, on the twenty-ninth day of April, 1846, made

partition, by metes and bounds, of the reversion, which being returned to court, was accepted and entered of record.

It is objected that the levy of Eells and the partition of Hodgdon are defective. It is obvious, that if valid, the plaintiffs, whose title is derived from Hodgdon, are entitled to recover.

But assuming the levy and the partition as invalid, still the plaintiffs have made out a perfect title by adverse possession. John Hodgdon, on the seventeenth day of April, 1850, conveyed by deed the premises in controversy to Shepherd Cary, from whom the title passed by descent to these plaintiffs. Cary entered under his deed, and during his life, was in the open, notorious, exclusive and adverse possession of the same. The plaintiffs succeeded to his estate, and their possession had the same characteristics. This occupation, thus exclusive, continued and adverse, had continued for over twenty years, when the defendant entered upon the premises with a full knowledge, or means of knowledge, of the facts.

When Hodgdon conveyed to Cary, in 1850, there was no existent estate in reversion, so far as regards the premises in contro versy. The attachment of the life estate of Ebenezer Warner in the suit of Cary against him, was void, the writ containing the money counts. The levy subsequently made on the judgment recovered, was long after the life estate had been conveyed to the defendant, and the record of that conveyance made. The attachment of the life estate of Ebenezer Warner at the suit of John Hodgdon was followed by a judgment and levy upon lands other than those in controversy. It follows that the plaintiffs are not affected by the levies upon the execution recovered against Ebenezer Warner, to which we have referred.

If the legal proceedings under which the plaintiffs claim are valid, the defendant has no title. If invalid, his claim is barred by possession, open, notorious, exclusive and adverse, for more than twenty years. *Quacunque via data*, the plaintiffs are entitled to judgment.            *Defendant defaulted.*

WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.