M. L. ARCHER, Appellant, v. EDWARD S. JACOBS, Appellee.

**Remainders.** The remainder given by deed or will to a certain person on the termination of a lesser estate, vests at the same time and by the same instrument as the prior estate, and will descend to his heirs if the devisee dies before coming into possession, may be alienated as an estate of inheritance, or subjected to the claims of creditors.

**Contingent remainder.** A contingent remainder is one where the right of the remainder-man to succeed to the possession and enjoyment of the estate is dependent upon some contingency which may never arise, or where the person entitled to succeed to its possession and enjoyment at the termination of the prior estate, may never be ascertained.

| 125 | 467 |
| 127 | 47 |

| 125 | 467 |
| 130 | 614 |
| 130 | 615 |

| 125 | 467 |
| h131 | 443 |

| 125 | 467 |
| d133 | 89 |
| f133 | 347 |

| 125 | 467 |
| 134 | 50 |
| 134 | 51 |
| 134 | 52 |

| 125 | 467 |
| 136 | 409 |

| 125 | 467 |
| 138 | 121 |

| 125 | 467 |
| 144 | 321 |
| 144 | 322 |

**Vested remainders.** Courts will hold a remainder vested, if it can be done without violation to the donor's intention.

**Same.** It is not the certainty of possession and enjoyment, but certainty of the right of future enjoyment provided the remainderman outlives the prior estate, which distinguishes a vested remainder.

**Termination of remainders.** A remainder cannot exist without a particular estate to support it, and if for any cause the particular estate expires before the remainderman is qualified to take possession, his interest expires with it.

**Wills:** VESTED REMAINDERS. Where a testator bequeathed one fourth of his entire estate to his daughter for life, and upon her death to go "share and share alike" to her children, upon testator's death such children then in being took a vested remainder, unaffected by the possibility of after born persons entitled to share therein.

**Same.** A remainder is not rendered contingent because there is no certainty that the remaindermen in being at the death of the testator, or their issue, will survive the taker of the first estate.

**Same.** A clause in a will devising property to a daughter for life, and that upon her death it shall go to her children, does not indicate an intention to postpone the vesting of the remainder until the death of the mother, but refers to the time when the remaindermen shall come into possession.

**Extinguishment of remainders:** MERGER. The union of a life estate, the vested remainder, and the reversion in a common grantee, merges and destroys the contingent remainders limited to persons who are not and may never be in being, and such contingent remainders constitute no cloud upon or defect in the grantee's title.

*Appeal from Emmet District Court.*— HON. A. D. BAILIE, Judge

THURSDAY, OCTOBER 27, 1904.

THE opinion states the case.— *Reversed.*

*Soper, Allen & Alexander,* for appellant.

*E. A. Morling,* for appellee.

WEAVER, J.— This appeal is from a judgment ren-

dered against plaintiff upon demurrer to his petition.   The facts disclosed by said pleading may be stated as follows:

Plaintiff, claiming to be the owner of a 160-acre tract of land situated in Emmet county, Iowa, entered into a written contract to convey the same in fee simple to the defendant.   Thereafter, in alleged pursuance of said contract, plaintiff offered and tendered to the defendant his warranty deed of the land, and demanded payment of the agreed price; but defendant refused to receive or accept the conveyance or to pay the agreed price on the ground that the title thus tendered was not marketable, and thereupon this suit was begun to enforce a specific performance.

The plaintiff's title is derived as follows: In the year 1865 the land was patented by the United States to William H. English, of the State of Indiana, and the title remained in him, unincumbered, until his death, on February 7, 1896. He left a will, which was duly probated, disposing of an estate of over a million dollars, much of which was in landed property.   By the terms of his will, after providing for a few minor legacies, the residue of the estate, including the land in controversy, was devised to his descendants.   He left no surviving widow, and the devisees hereinafter named constituted all his surviving heirs and next of kin.   The residuary devise to which we have referred is in the following words:

(8) All the rest and residue of my estate, real, personal and mixed and wherever the same may be situated I give and bequeath to my beloved children and grandchildren in the proportion following, that is to say:

To my son, William E. English, ½ of my said estate.

To my grandson, William English Walling, ⅛ of my said estate.

To my grandson, Willoughby George Walling, ⅛ of my said estate.

To my daughter, Rosalinda English Walling, mother of my said grandsons, ¼ of my said estate, to have and to hold the same for and during her natural life with the right to

use and enjoy the accretions thereof and manage said estate without impairing the principal or aggregate value of the same, which estate at her death I will and devise shall go upon her death, share and share alike to her children, or if there be grandchildren to them shall go the share the parent would have received, if living. If she should die leaving neither child nor grandchildren, then the ¼ of my· estate last mentioned, less the profits and accumulations of the same which my daughter may have used or otherwise disposed of, shall go to my son, William E. English, or if he be dead leaving child or children, then to it or them.

The ⅛ of my estate in this item bequeathed directly to my grandson, William English Walling, and the ⅛ of my estate bequeathed to my grandson, Willoughby George Walling, are to be paid to my said grandsons, with the earnings and accretions thereof, as they shall each arrive at the age of 21 years, but each shall be supported and educated out of the same before that time, I mean that their ⅛ shall be paid or set off to each.

(9) In the event of the death without issue of my grandson, William English Walling, or my grandson, Willoughby George Walling, before receiving the bequest made to them by this will of the ⅛ to each of my estate, the share such grandson would have received, had he lived, shall go to my said daughter, Rosalinda English Walling, subject to the same conditions as the bequest hereinbefore made to her. But if either of my said grandsons shall marry and die before receiving the bequest of ⅛ of my estate leaving child or children by such marriage, then such child or children shall be entitled to the share the parent would have received, had such parent lived.

(10) I hereby appoint my son, William E. English, and my daughter, Rosalinda English Walling, the Executrix and Executor of this Will and request that no bond shall be required of them above the amount of the specific money bequest made herein by paragraphs No. 2, 3, 6 and 7.

The estate has been fully administered, and the executors discharged. After the death of the testator, the devisees mentioned in the will, William E. English and Rosalinda E. Walling, acting in their own right, and William English Walling and Willoughby George Walling (then being min-

ors), acting by their duly appointed guardian, Willoughby Walling, proceeded to make a partition of the devised lands among themselves by mutual deeds of conveyance, with the intent and purpose of enabling them, and each of them, to obtain and hold in severalty the several tracts or parcels of land according to the allotment agreed upon. In this partition the land in controversy was allotted to William E. English, and, to confirm and effectuate said allotment, Rosalinda E. Walling and her husband, together with Willoughby Walling, as guardian of the two minor devisees, united in a deed conveying to the said William E. English all their interest in said land. The deeds by which this partition was accomplished were reported to the circuit court of Marion county, Ind., where the said estate was being settled, and by which said guardian was appointed, and were by said court ordered approved and confirmed. Thereafter, and after the said William English Walling and Willoughby George Walling had arrived at their majority, they each ratified and confirmed said partition by executing and delivering to said William E. English a deed conveying and releasing to him all interest held or owned by said grantors in or to said land. Later William E. English sold and conveyed said land by warranty deed to the plaintiff in this case. Taking this recital of facts as admitted, is the title thus derived good and marketable?

I.   It will be observed from the foregoing showing that the title of William H. English at the date of his death was perfect, and that all persons in being, having any present or contingent interest of any kind in said land under his will, have conveyed the same, either mediately or immediately, to the plaintiff. It follows, therefore, that plaintiff's title is also good, unless we are required to hold that the several estates devised by the testator to his children and grandchildren specifically named in the will, or to some of them, are so limited or restrained that, when all are combined or merged by proper conveyances in a common grantee, they

aggregate something less than the entire fee. It is the contention of the appellee that such defect does exist. It is conceded, as we understand counsel, that by the will of William H. English, and by the deeds from Mrs. Walling and her two sons to William E. English, and from William E. English to plaintiff, the latter obtained a good title to a three-fourths interest in the land. It is urged, however, that, as to the one-fourth interest in which a life estate was given to Mrs. Walling, the remainder over is contingent and uncertain, and it cannot be ascertained until her death who will take the same. It is said that such remainder is subject to the following contingencies: (1) The life tenant may bear other children to share in the inheritance; (2) her children may die during her lifetime, in which event the remainder will pass to their children, if any survive the life tenant; (3) no child or grandchild may survive her, in which event the remainder will pass to her brother William E. English, or, if he be dead, then to his children, or, if he leave no children, then the title will revert to the estate of William H. English. Assuming, for the purposes of argument, the existence of these remote possibilities, what is the nature of the remainder devised to the sons of Mrs. Walling?

The distinction between vested and contingent remainders has been the subject of frequent consideration by courts and text-writers from an early day in the development of the common law. In the statement of general rules and definitions there is no great diversity of opinion, but in their application to cases there is considerable confusion. We will here make no attempt to collate, contrast, or reconcile inharmonious decisions, but content ourselves with reference to some of the authorities on which we base our conclusions. Thus far in the legal history of Iowa the courts have rarely been called upon to consider the more intricate phases of the common law of real estate titles, the result being that even to the professional ear the technical words and archaic expressions with which the literature of that law abounds are

suggestive of darkness and mystery rather than light.   Some of these difficulties are of a very substantial and obdurate character, but in other respects the meaning and effect of the ancient rules and principles, even when couched in the formal and ponderous language of past centuries, may readily be ascertained.   Avoiding, so far as possible, mere abstract definitions, it may be said if A., being the owner of land, gives it by deed or will to B. for life, and after the death of B. to C. in fee, the estate given to C. is called a "remainder," because it is the remnant or remainder of the estate or title which is left after taking out the lesser estate given to B.   The same is true where, instead of a life estate, B. is given an estate for years, or any other terminable estate less than a fee.   B. is ordinarily spoken of as the "first taker," because he is the first to come into the possession and enjoyment of the land; and his estate is called a "particular estate," because it is but a part of the general estate which is finally to pass to or culminate in C.   The case here given illustrates the simplest form of creating a remainder. Stated in brief, the grantor or testator creates two successive estates in the land, the future or ultimate ownership being given to one, but the gift does not take effect in possession or enjoyment until after the precedent or particular estate has terminated.   In a great majority of cases involving the law of remainders the particular estate is an estate for life, and in this opinion we shall treat it as typical.

In the case by which we have just illustrated the definition of "remainder," the estate or interest of C. in the land is not suspended during the lifetime of B., but his remainder vests at the same instant and by the same grant as does the life estate in B.   In legal effect, the fee in the land passes directly from A. to C., subject to the life estate of B.; and although C. cannot enter upon the possession, use, or enjoyment of the property until B.'s estate is terminated, yet the fee, less the life estate, is in him, and will descend to his heirs if he die before coming

1. REMAINDERS.

into possession, and, as an estate of inheritance, it may be aliened by him or subjected to the claims of his creditors. We have thus far assumed in the illustration that C., the remainderman, is a person in being at the date when the deed or will creating the estates goes into effect. An element of some complication is added when any of the beneficiaries named are not then *in esse,* and so far as that feature has a bearing on the case before us, will be hereinafter more particularly referred to. The remainder is said to be contingent where the right of the remainderman to succeed to the possession and enjoyment of the estate depends upon some contingency which may never arise, or where the person who shall be entitled to succeed to such possession and enjoyment at the termination of the life tenancy is not and may never be ascertained, or is not in being.

According to Chancellor Kent (4 Commentaries, 206), a contingent remainder is one which is so limited by the terms of the deed or will creating it " as to depend on an 2. CONTINGENT event or condition which is dubious and uncerREMAINDERS. tain, and may never happen or be performed, or not until after the determination of the particular estate." It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the difference between a vested and contingent interest. For instance, in the illustrative example which we have been using, if the remainder, instead of being given or (to use the language of the books) " limited " to C., had been limited " to the first son hereafter born to C.," or to " C. when he shall have graduated from the university," the remainder thus created would be classed as contingent, because in each case the contingency upon which it is to take effect may never occur, or it may not occur until after the life estate has terminated, and in either event the remainder is extinguished. In other words, the remainderman must be qualified and entitled to take the possession immediately upon the termination of the life tenancy, or he can never

take it at all.   Generally speaking, when there is a person in being who would have an immediate right to the possession of the lands, should the life tenancy now terminate, such person has a vested remainder.   If, however, something more than the duration of the life tenancy stands between the remainderman and the right to immediate possession — if there be some unperformed or unfulfilled contingency which would prevent his taking possession, were the life tenancy now to terminate — then his remainder is contingent.   In other words, " it is the present capacity of taking effect in possession if the possession were now to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder."

Like all other attempts to reduce the law upon any subject to a single proposition, this statement is probably subject to some seeming exceptions, and it has not escaped criticism at the hands of a few law writers; but it has the support of most distinguished authority, and is very generally adopted by the courts.   4 Kent's Commentaries, 202; 2 Cooley's Blackstone, 164, note; 1 Preston's Estates, 70; 1 Fearne's Remainders, 216; 2 Washburn, Real Property, 1541; 2 Pingrey, Real Property, 995; *Anthracite Bank v. Lees,* 176 Pa. 402 (35 Atl. Rep. 197); *Croxall v. Sherrerd,* 5 Wall. 268 (18 L. Ed. 572); *Bruce v. Bissell,* 119 Ind. 530 (22 N. E. Rep. 4, 12 Am. St. Rep. 436); *Brown v. Lawrence,* 3 Cush. 390; *Moore v. Littel,* 41 N. Y. 72; *Vandyke's Adm'r v. Vanderpool's Adm'r,* 14 N. J. Eq. 198; *Williamson v. Field's Ex'rs,* 2 Sandf. Ch. 553; *Schuyler v. Hanna,* 28 Neb. 601 (44 N. W. Rep. 731, 11 L. R. A. 321); *Mer. Bank v. Ballard's Assignee,* 83 Ky. 481 (4 Am. St. Rep. 160); *Thaw v. Ritchie,* 5 Mackey, 200; *Kumpe v. Coons,* 63 Ala. 452; *Smith v. West,* 103 Ill. 332; *Cruger v. Heyward,* 2 Desaus. (S. C.) 94; *Davis v. Laning,* 85 Tex. 39 (19 S. W. Rep. 846, 18 L. R. A. 82, 34 Am. St. Rep.

784); *Avery v. Everett,* 110 N. Y. 317 (18 N. E. Rep. 148).

It is also the well-settled doctrine that courts always hold a remainder to be vested if the same can be done without manifest violation of the intention of the donor. 1 Fearne's Remainders, section 200; 1 Kent's Commentaries, 203; *Davidson v. Bates,* 111 Ind. 391 (12 N. E. Rep. 687); *Straus v. Rost,* 67 Md. 465 (10 Atl. Rep. 74); *Sager v. Galloway,* 113 Pa. 500 (6 Atl. Rep. 209); *Scott v. West,* 63 Wis. 520 (24 N. W. Rep. 161, 25 N. W. Rep. 18); *Scofield v. Olcott,* 120 Ill. 362 (11 N. E. Rep. 351).

**3. VESTED RE-MAINDERS.**

The uncertainty whether the remainderman will outlive the life tenancy and come into the actual possession does not make the remainder contingent, for that is a contingency which attaches to all remainders of every kind, or, as the rule is generally stated, it is not the certainty of possession and enjoyment which distinguishes a vested remainder, but it is the certainty of the right to the future enjoyment if the remainderman lives until the life tenancy terminates. *Lehndorf v. Cope,* 122 Ill. 317 (13 N. E. Rep. 505); *Mer. Bank v. Ballard's Assignee,* 83 Ky. 481 (4 Am. St. Rep. 160); *Saxton v. Webber,* 83 Wis. 617 (53 N. W. Rep. 905, 20 L. R. A. 509).

**4. SAME.**

As already intimated, if a remainder be contingent, and the contingent event does not occur until after the expiration of the life tenancy, the remainder is extinguished, because it is an invariable principle that a remainder cannot exist without a particular estate to support it, and, if the particular estate expires before the remainderman is qualified to take possession, the remainder expires with it. In this connection it is to be further noted that a life tenancy may be terminated in other ways than by the death of the tenant. At common law such estate could be prematurely terminated by an attainder of the tenant thus working a forfeiture to the crown, or by the

**5. TERMINATION OF REMAIN-DERS.**

act of the life tenant himself in conveying the land by feoff-
ment and livery of seisin, or by suffering a fine or recovery,
or by surrender of the estate to the immediate remainderman
or reversioner, or by merger of the estate in the inheritance.
The elimination of the life estate in either of these methods
had precisely the same effect upon the interests of the re-
mainderman as if the tenancy had been determined by the
death of the tenant, the holder of the vested remainder ac-
quired the immediate right of possession, and the contingent
remainders, if any, were forever destroyed.   Forfeiture by
attainder is not recognized in modern jurisprudence.   The
solemn farces enacted in fictitious suits known as " fines "
and " recoveries " have been practiced in some of the older
States of the Union, but are now quite generally abolished.
The transfer of title by feoffment and livery of seisin has
given way to the more simple methods of modern convey-
ancing, although its practice lingered in some of our States
until a comparatively late day.   *Redfern. v. Middleton's·
Ex'rs,* 1 Rice (S. C.) 459.   But the effect of a surrender
of the life estate, or of its merger into the inheritance, seems
to remain unimpaired, except in those jurisdictions where
changes have been introduced by statute.·

Bearing these rules in mind, let us now return to the
will of William H. English, through which the title in con-
troversy is traced.   After giving one-half his estate to his
son, William E., and one-eighth each to his two
grandsons, he gives the remaining one-fourth
to his daughter, the mother of said grandsons, for life, and
upon her death to go " share and share alike to her children,
or if there be grandchildren to them shall go the share the
parent would have received, if living.   If she should die
leaving neither children nor grandchildren, then the ¼ of
my estate last mentioned   *   *   *   shall go to my son,
William E. English, or if he be dead leaving child or chil-
dren, then to it or them."   The daughter and her two sons
were all living at the death of the testator.   Upon his de-

6. WILLS:   vested
remainders.

cease the daughter became instantly clothed with the life estate devised to her, and at the same instant her two sons acquired the remainder. The interest thus acquired by them was a fixed right to the future possession and enjoyment of the property in fee. No other right or contingency than the life estate of their mother interposed between them and such possession, and the only uncertainty of its actual enjoyment was in the possibility of their own death before the falling in of the life estate. In short, they had at all times the " capacity to take " immediately and unconditionally upon the possession becoming vacant by the termination by death or otherwise of the life tenancy, and, upon the principles hereinbefore recited, their remainder was vested.

To this it is objected that the remainder provided by the will is not given specifically or by name to. the two sons, but to Mrs. Walling's children as a class, and that she may yet have other children who will be entitled to share in 'the remainder, and this possibility creates an essential uncertainty as to the persons upon whom it will finally fall. But a remainder over to a class, any member of which is in being at the time the will goes into effect, is quite generally held to vest at once upon the death of the testator, notwithstanding the possibility of after-born persons who may be entitled to share in the remainder. Under such circumstances the remainder is said to open to let in those of the class who come into being during the continuance of the particular estate, but the remainder is none the less vested so long as there is any of the class *in esse,* for such child or children have the capacity to succeed immediately and unconditionally to the possession, should the life tenancy determine. 2 Washburn, Real Property, sections 1533, 1545; 1 Tiffany, Real Property, page 291; Tiedeman, Real Property, (Enl. Ed.) section 402; *Waddell v. Waddell,* 99 Mo. 338 (12·S. W. Rep. 349, 17 Am. St. Rep. 575; *Doe v. Considine,* 6 Wall. 458 (18 L. Ed. 869); *Amos v. Amos,* 117 Ind. 19

(19 N. E. Rep. 539); *Dole v. Keyes,* 143 Mass. 237 (9 N. E. Rep. 625); *Byrnes v. Stilwell,* 103 N. Y. 453 (9 N. E. Rep. 241, 57.Am. Rep. 760); *McArthur v. Scott,* 113 U. S. Rep. 380 (5 Sup. Ct. 652, 28 L. Ed. 1015); *Chew's Appeal,* 37 Pa. 28; *Scott v. West,* 63 Wis. 573 (24 N. W. Rep. 161, 25 N. W. Rep. 18); *Bowditch v. Andrew,* 8 Allen, 339; *Austin v. Bristol,* 40 Conn. 120 (16 Am. Rep. 23).

It is next said that the remainder is contingent because " there is no certainty that Willoughby George Walling or William English Walling — either one or both — will sur-

7. SAME.    vive their mother. There is no certainty that they will have issue, or, if they have issue, that such issue will survive Mrs. Walling." But none of these contingencies affect the vesting of the remainder in the sons, as the only representatives in being of the class to which the remainder is given. It is true, the will is open to such construction that the remainder vested in the sons of Mrs. Walling may be divested by their death pending the continuance of the life estate; but, as will be noted by reference to cases last above cited, and many others to the same effect, this does not render the remainder contingent, for up to the last moment of their lives their capacity to take the possession, were it to become vacant, is unimpeachable. *Thaw v. Ritchie,* 136 U. S. Rep. 546 (10 Sup. Ct. 1037, 34 L. Ed. 531); *Dodd v. Winship,* 144 Mass. 464 (11 N. E. Rep. 588); *Kan. City Land Co. v. Hill,* 87 Tenn. 589 (11 S. W. Rep. 797, 5 L. R. A. 45); *Penn Ins. Co.'s Appeal,* 109 Pa. 489 (1 Atl. Rep. 83). As far as the will attempts to limit any interest to children not yet in being, it is uncertain both as to the event and to the person, and such interest is therefore clearly contingent; but, as far as it limits the remainder to persons now in being, and ready to take if the possession become vacant during their lifetime, it is vested. 2 Fearne, Rem. section 180.

It is next said that, even conceding these general doc-

trines, yet the will of William H. English directs that the estate shall go to his grandchildren or their issue " upon the death " of his daughter; thereby indicating his purpose and intent to have his gift of the remainder vest from that date, and not from the date of his own death. We think this construction cannot prevail. The will gives evidence of having been prepared by a person of experience, and the testator himself must have been a man of intelligence and business sagacity. Had it been his purpose to suspend the vesting of the remainder until his daughter's death, it is very probable he would have said so in unequivocal terms, and not have left it to be arrived at as a matter of inference. Words like those under consideration and others of similar import are of common use in wills, and, save in a few exceptional cases, the courts have uniformly held them to refer to the time when the remainderman shall come into the enjoyment of the estate, and not to the time when his interest vests. Such is the interpretation where the gift of the remainder follows the words " upon the death," or " after the death," or " at the death " of the life tenant, or other equivalent forms of expression.

8. SAME.

In *Kinkead v. Ryan*, 64 N. J. Ch. 454 (53 Atl. Rep. 1053), the words creating the remainder are (having first provided a life estate for the wife) : " After the death of my said wife I give, devise and bequeath all my estate unto my beloved children [naming them], and any other child that may be born hereafter share and share alike and to their heirs and assigns forever. * * * If any of my said children should die before my said wife then it is my will that upon my wife's death the share of my estate which would have gone to such deceased child, shall go to the heirs at law of such deceased child." These words were held insufficient to postpone the vesting of the remainder in the children *in esse*. In *Beatty's Adm'r v. Montgomery's Ex'x*, 21 N. J. Eq. 324, the same construction was given to the

words " from ana after the death of my wife I give and
bequeath," etc.; and it was held that, although each of the
remaindermen died before the determination of the life
tenancy, the remainder was vested in them, and passed to
their representatives. See, to the same effect, *Field v. Peo-
ples,* 180 Ill. 376 (54 N. E. Rep. 304); *McArthur v. Scott,*
113 U. S. Rep. 340 (5 Sup. Ct. 652, 28 L. Ed. 1015);
*Doe v. Considine,* 6 Wall. 458 (18 L. Ed. 869); *Johnson v.
Valentine,* 4 Sandf. 45; Boraston's Case, 3 Coke, 20; *Min-
nig v. Batdorff,* 5 Pa. 506; *Hoover v. Hoover,* 116 Ind. 498
(19 N. E. Rep. 468); *Amos v. Amos,* 117 Ind. 37 (19 N.
E. Rep. 543); *Sager v. Galloway,* 113 Pa. 500 (6 Atl. Rep.
209); *Harris v. Carpenter,* 109 Ind. 540 (10 N. E. Rep.
422); *Estate of Hoffen,* 70 Wis. 524 (36 N. W. Rep. 407).
There seems, indeed, to be no material conflict in the au-
thorities upon this proposition.

Our conclusion that the remainder, vested in the two
sons of Mrs. Walling is not inconsistent with the decision in
*Taylor v. Taylor,* 118 Iowa, 407, on which appellee relies.
The controversy in that case turned very largely upon the
question whether, in the gift of a remainder " to be equally
divided between my children or their heirs," the word " or "
was to be construed as " and." A majority of the court
found that the testator used the disjunctive advisedly, and
intended to suspend the vesting of the remainder until the
death of the life tenant. The definitions there given of
vested and contingent remainders are in harmony with the
rules we have approved in this opinion, and, if applied to
the facts now before us, would necessitate the same conclu-
sion we have here reached. Without prolonging this phase
of the discussion, we have to say that due respect to the over-
whelming weight of authority requires us to hold that upon
the death of William H. English the two sons of Mrs.
Walling became at once vested with the remainder in fee to
the property in which their mother took a life estate.

II.   Assuming the correctness of the position we have taken in the preceding paragraph, it must then be held that the conveyances from Mrs. Walling and her sons to William E. English, and from the latter to plaintiff, operate to unite in the plaintiff both the life estate given to Mrs. Walling in one-fourth of the land; and the remainder therein vested in her said sons, ,as well as the fee in the other three-fourths which was devised directly to William E. English and William English Walling and George Willoughby Walling.   It must also be remembered, as suggested in argument, that in the event that the remainder in the grandsons of the testator be divested by their death without issue during the continuance of the life estate, and none of the contingent remaindermen are in existence to take the possession when that estate determines, then the title to this one-fourth of the land will revert to the testator, or rather to his heirs.   The only heirs at law of the testator were William E. English and Mrs. Walling, and by their deeds this reversion passed to the plaintiff. *Craig v. Warner,* 5 Mackey (D. C.) 460, 60 Am. Rep. 381; Fearne's Cont. Rem. 360.   This union of the life estate, the vested remainder, and the reversion in a common grantee must be held, we think, to merge and destroy the contingent remainders limited to persons who are not, and may never be, in being.

It was always possible to defeat a contingent remainder at common law by destroying the particular estate before the happening of the contingency upon which the interest was to become vested.   2 Washburn, Real Property, section 1544.   In some and perhaps in most of the States, statutes have been enacted to regulate or prevent such elimination of contingent interests, but in the absence of such enactments the courts very generally recognize the effect of a surrender or merger of a life estate as at common law.   A merger takes place whenever a greater and a lesser estate in

*Margin note:* 9. EXTINGUISH-MENT OF RE-MAINDERS: merger.

the same land meet in the same person. Upon such a union of different estates in the same person in the same right without any intermediate estate, "the less is immediately annihilated, or, in law phrase, it is said to be merged — that is, sunk or drowned — in the greater." 2 Blackstone, Commentaries, 177. Speaking of this doctrine as applied to a life estate upon which contingent remainders may depend, Mr. Fearne says: "This merger may be occasioned by the act of the particular tenant in various ways: (1) If the tenant for life accepts the reversion in fee before the vesting of the contingent remainders; (2) if the tenant for life surrenders, bargains or sells, leases and releases, to the immediate vested remainderman in tail or in fee; (3) if the tenant for life and the immediate remainderman or reversioner join in a conveyance; (4) if the tenant for life, having also the immediate vested remainder or reversion, bargains and sells, or leases and releases." 2 Fearne's Rem. sections 777, 778. The rule is stated in American & English Ency. Law (2d Ed.) 592, as follows: "Where a life estate and the reversion or remainder in fee or in tail meet in the same person without any intervening estate, the result is that the life estate is merged in the inheritance, and the owner's title becomes absolute." To the same effect, see Tiedeman, Real Property (Enl. Ed.) section 63; *Allen v. Anderson,* 44 Ind. 395; *Kreamer v. Fleming,* 191 Pa. 534 (43 Atl. Rep. 388); *Field v. Peoples,* 180 Ill. 376 (54 N. E. Rep. 304); *Cary v. Warner,* 63 Me. 574; *Scott's Ex'x v. Scott,* 18 Grat. 150; *Purefoy v. Rogers* (Eng.) 2 Saund. 380; Challis, Real Property, 67; Armour's Real Property, 228, 108; *Bennett v. Morris,* 5 Rawle, 15; Butler's Notes to Fearne's Cont. Rem. (3d Am. Ed. from 8th London Ed.) 322; *Mangum v. Piester,* 16 S. C. 316.

In the Field Case, above cited, as in this case, the mother took a life estate, with remainder over to her children generally. At the death of the testator there was one child of

the daughter in existence, who was held to take a vested remainder, which opened later to let in an after-born child. Later the mother conveyed to these two children, and it was decided that the life estate was thereby " merged in the fee and became extinct." The case at bar comes clearly within the precedent cited, as well as within the rule laid down by Fearne and other text-writers, and approved by the courts without material exception; and we see no escape from the proposition that, by the conveyance of Mrs. Walling's life estate to the grantee of the vested remainder and reversion, the life tenancy was merged or sunk in the greater estate. With this merger or destruction of the life estate, the contingent remainders depending thereon necessarily fall, and constitute no cloud upon or defect in the title of said grantee.

III.   Counsel have given considerable attention to the division of property made between the devisees of William H. English, and to the effect, if any, which such division has upon the contingent rights attaching to the one-fourth interest or share in which Mrs. Walling was given a life estate.   The conclusion already announced deprives this question of controlling importance, and we need not stop to consider it.

Holding as we do that the union in plaintiff of the life estate and the vested remainder vests in him an indefeasible title, it follows that the decree of the district court must be, and it is, *reversed*.