JOHN LINGO, Appellee, v. GERTRUDE M. SMITH et al., Appellees, GEORGE L. SMITH et al., Appellants.

HELEN EUNICE SMITH et al., Appellees, v. GEORGE L. SMITH et al., Appellants, MILLARD SMITH et al., Appellees.

GERTRUDE M. SMITH et al., Appellees, v. GEORGE L. SMITH et al., Appellants, MILLARD SMITH et al., Appellees.

**WILLS: Construction—"Remaining Brothers and Sisters".** A will provided: (a) that the widow should have a life estate in a farm; (b) that the remainder should go to two children in case they outlived the widow or had issue; and (c) that, in case either child died prior to the widow and without issue, the share of such deceased child should go to "the remaining brothers or sisters". *Held* that, where one of such remaindermen died before the widow and without issue, the clause "remaining brothers and sisters" included the *surviving* remainderman.

**WILLS: Construction—"Life Interest".** "A life *interest* in and to my farm", in connection with a subsequent clause, is construed to mean "a life *estate* in the use, occupancy and control" of the farm.

**WILLS: Remainders—Vested (?) or Contingent (?)—Preference of the Law.** The law so strongly favors the early vesting of estates that it regards all estates as vested unless a condition *precedent* is so clearly expressed that the estate cannot be regarded as vested without doing violence to the language of the instrument. And, *if possible*, the law will even construe words of seeming condition as having no other effect than to postpone the time of enjoyment.

PRINCIPLE APPLIED: A testator gave to his wife a life estate in a farm, and to his two youngest sons, the remainder thereof, equally, "on the death of my said wife, should they outlive her *or have issue*; but should she survive one or both of said children, then the share that would otherwise have gone to such child shall be inherited in equal shares by the remaining brothers or sisters living or having issue". The said wife, both the two youngest sons (remaindermen) and five other children survived testator. (The younger remainderman died when a mere child, and, of course, issueless, and the one half of the farm which he failed to take passed to his six brothers and sisters, one twelfth to each.) The older remainderman mortgaged seven

twelfths of the farm, died before testator's wife, but left a widow, and three children born after testator's death. The constructions of the will contended for were:

1. By the mortgagee and widow of the remainderman: That the remainderman took a vested estate on the death of testator, the element of time not being of the essence of the devise, but relating solely to the time of enjoyment of the devise; that the happening of either of two conditions subsequent, to wit, the remainderman's (a) outliving the testator's wife (his mother) or (b) leaving issue, rendered the vested estate non-divestible; that the first did not happen, but the second did; that, therefore, his estate was never divested; that, therefore, the mortgagee was first in right, the remainderman's widow second, the remainderman's three children third.

2. By the remainderman's three children: That their father's estate was contingent; but if it did vest, it was divested by his death prior to that of his mother; and that the words of the will, *"or have issue"*, were words of substitution—that is, words which substituted them as devisees in lieu of their father.

3. By the five surviving children of testator: That the estate did vest in the older remainderman (their brother), but was divested by his death before that of the testator's wife; and therefore the estate passed to them under the will, just as the first half passed to the testator's six children when the younger remainderman died.

*Held,* the first contention was correct.

**WILLS:** Construction—Words of Substitution—**"Or Have Issue."** Words cannot be given the force and effect of "words of substitution"—that is, words substituting another or others as legatees, in case the first legatee fails to take—when such words are not employed in connection with other words purporting a gift or an intention to make a gift, but used solely in defining *when and under what circumstances the remainderman shall come into the enjoyment and possession of the property.*

PRINCIPLE APPLIED: See the italicized words "or have issue" under No. 3.

**WILLS:** Construction—Defeasance Clause—**Manifest Omission.** It is, in effect, suggested that the construction of the defeasance clause of a will might require the *insertion* of a clause manifestly intended to be inserted, but inadvertently omitted.

**WILLS:** Construction—Grant of Fee—Repugnant Clause—**Effect.** The clear grant of a fee is not overthrown by a subsequent clause repugnant thereto.

PRINCIPLE APPLIED: See Par. 6 of the will, and compare the clauses preceding and following the word ''but.''

*Appeal from Page District Court.*—O. D. WHEELER, Judge.

TUESDAY, FEBRUARY 22, 1916.

THE facts appear in the opinion. The surviving children of testator appeal.—*Affirmed.*

*Denver L. Wilson, Thomas W. Keenan* and *Henry Howard, Jr.,* for appellants.

*Tinley, Mitchell & Pryor, Earl R. Ferguson, C. R. Barnes,* and *Frederick Fischer,* for appellees.

LADD, J.—The will of William A. Smith, Sr., deceased, was admitted to probate June 4, 1878, and, after providing for the payment of debts, a monument to his memory, a legacy to the eldest son, and giving personal property to his wife, proceeded:

''(4) I also give, devise and bequeath to my said wife a life interest in and to my farm in Grant Township, Page County, Iowa, being the southeast quarter of Section 16, Township 69, Range 39, to use and occupy and control as her own during her natural lifetime, and on her death to descend to my two youngest children, William A. and Marcus.

''(5) I hereby give, devise and bequeath to my two youngest children, William A. and Marcus Smith aforesaid, during their minority, a home and good common school education from the proceeds of my farm aforesaid, so long as they live with their mother.

''(6) I also give, devise and bequeath to my said two children, William A. and Marcus Smith, the reversionary interest in and to my said farm, which they shall inherit in equal shares on the death of my said wife should they outlive her or have issue; but should she survive one or both of said children, then the share that would otherwise have gone to

such child shall be inherited in equal shares by the remaining brothers and sisters living or having issue."

The clauses following dispose of a colt to one son and bequeath any personal property remaining, to this son and three daughters, share and share alike. A widow, Helen Smith, and seven children survived deceased; but Marcus Smith died January 22, 1879, at the age of four years, and William A. Smith, Jr., September 5, 1911, when thirty-nine years old, leaving a widow, Gertrude Smith, and three children, Helen Eunice Smith, born in 1893, and Jennie May Smith, born in 1896, by a former marriage, and Howard Smith, born in 1909. The widow of testator, Helen Smith, died, February 27, 1914. On April 27, 1909, William A. Smith, Jr., his wife joining, executed a mortgage to John Lingo, covering the undivided 7/12 interest in the 160 acres of land disposed of in the clauses of the will quoted, to secure the payment of $4,000 borrowed of him. This mortgage became due, and suit to foreclose was begun. A son of testator, George L. Smith, and three daughters, Susan Judkins, Eunice Wise and Mayme Howard, intervened, asserting that the mortgagor had no interest in the land, and that, on the death of testator's widow, it passed to them and another son, Millard Smith. The daughters of the mortgagor by answer denied that William A. Smith, Jr., ever had any interest in the land, and alleged that, on the death of testator's widow, an undivided 7/12 thereof passed to them and their half brother, Howard Smith. They began a suit in partition, so alleging, and asking appropriate relief; and on the same day, Gertrude Smith, widow of William A. Smith, Jr., and the guardian of her minor son, Howard Smith, filed a petition praying for a construction of the will. These several actions were submitted together on an agreed statement of facts. The right of the several parties depends on the construction to be given the several clauses of the will. As Marcus died without issue, prior to death of the life tenant, all agree that the one half

of the farm thereupon was "inherited in equal shares by the
remaining brothers and sisters living or having issue".

1. WILLS: con-
struction:
"remaining
brothers and
sisters".

I.  The "remaining brothers and sisters" were those other than "such child" dying before the life tenant, and necessarily included William A. Smith, Jr.  Upon the
death of Marcus then, the remainder in an undivided half of
the farm vested in the six children, and the mortgage covered
William's share thereof, or 1/6 of said undivided ½, or 1/12
of the entire farm.

II.  The gift of a life estate in the farm to testator's
widow is plain, though some words may not have been employed in their technical sense.  In the first clause quoted,
the devise is of "a life interest" in the farm,

2. WILLS: con-
struction: "life
interest".

describing the latter, but is it this "life interest" that she is "to use and occupy and control as her own during her natural life", or is it the farm?
We think the latter, and that the language quoted is to be
construed as defining or describing what was intended by
"life interest".  Certainly, the expression "a life interest"
alone means no more than some "interest" during someone's
life, and affords no intimation of the extent of such interest.
If, however, the language following be construed as defining
what was intended by the "life interest" given his surviving
spouse, the clause becomes definite and effective in disposing
of the life estates.

III.  In whom is the title to the remaining undivided half
of the farm?  (a) The surviving children of the testator say
that the remainder vested in William and Marcus upon testator's death, and was divested on the hap-

3. WILLS: re-
mainders:
vested (?) or
contingent (?):
preference of
the law.

pening of a condition subsequent, i. e., the death of the life tenant.  (b) The plaintiff (mortgagee) and the widow of William agree
that the remainder so vested, but argue that,
as he left issue, it was not divested by the condition subse-

.quent. (c) The children of William contend that the remainder was contingent, and that, if it did vest, it was divested by the death of William before that of the life tenant, the widow, and in either event title passed to the issue of William surviving.

If it was the farm that the widow was to use and occupy, as we think, then it was the farm, rather than its use and enjoyment, which was to "descend to my two youngest children, William A. and Marcus". This construction is strongly confirmed by the clauses following, according these children a home and common school education during minority, if living with the mother, from the proceeds of the farm, and in the last, disposing of "the reversionary interest in and to my farm" only after the termination of the life estate by the widow's death. There was no room for any separate use and enjoyment by the two children; for this was devised to the widow during her life, and upon her death, the entire estate, not merely the use and enjoyment, passed to those entitled to the remainder. Though not expressed by technical words, the reasonable construction of the first clause quoted is that it devised the life estate to the widow, and recited at least that the two children were to take the remainder. The third of the clauses quoted in direct terms gives the remainder, though misnaming it the "reversionary interest", to William A. and Marcus, share and share alike, and provides that they shall take it precisely as in the first clause, i. e., upon the death of the widow. It is said in the first clause that the farm is "to descend" to the sons, and in the last, that "they shall inherit". Though these words are not employed in a technical sense, they do indicate an intention not only that these children take directly from the testator, but upon his death. In event of intestacy, the descent or inheritance is immediate upon death, and, as used in this will, which speaks as of the date of testator's death, the words may well be construed as expressing the testator's design that the fee pass

upon his death to William and Marcus. Otherwise, title must have stood in abeyance pending the life estate. The law favors a construction that a remainder is vested, rather than contingent, for that the convenience of beneficiaries and the interests of society are opposed to tying up property and thereby withdrawing it from the ordinary channels of commerce. To this end, all estates will be regarded as vested unless a condition precedent thereto is so clearly expressed that it cannot be regarded as vested without doing violence to the language of the will. To effectuate this rule, words of seeming condition are, if possible, to be construed as postponing the time of enjoyment. The distinction between a vested and contingent remainder is often shadowy and difficult to ascertain. Definitions of these are to be found in many previous decisions, as are also the rules by which they may be distinguished. See *Taylor v. Taylor,* 118 Iowa 407; *Shafer v. Tereso,* 133 Iowa 342; *Archer v. Jacobs,* 125 Iowa 467.

In *Birdsall v. Birdsall,* 157 Iowa 363, some inaccuracies in the two preceding cases are corrected. In a case like the one at bar, the test is whether the time relates to the enjoyment of, or is of the substance of the gift.

In *Olsen v. Youngerman,* 136 Iowa 404, the gift was construed to be within the well-established rule that, where the gift is implied from the direction to divide or pay at a future time, the gift is future, not immediate; contingent, not vested. In other words, where the gift is to be implied from the direction to divide or distribute, it necessarily is inseparable from that direction and must partake of its quality; so that, if one is contingent, the other must be. See *McClain v. Capper,* 98 Iowa 145; *In re Kountz's Estate,* 213 Pa. 390 (62 Atl. 1103); *In re Crane,* 164 N. Y. 71 (58 N. E. 47); *McCartney v. Osburn,* 118 Ill. 403 (9 N. E. 211).

In such a case the conditional element is incorporated into the description of or into the gift to the remainderman. Gray, Rule against Perpetuities, Sec. 108; *Ducker v. Burnham,* 146 Ill. 9 (37 Am. St. 135).

The law presumes that words of postponement relate to the enjoyment of the remainder, rather than the vesting thereof, and the intent to postpone the vesting of the estate must be clear and manifest. *Dale v. White*, 33 Conn. 294; *Heilman v. Heilman*, 129 Ind. 59.

If it is doubtful whether words of contingency or condition apply to the gift itself or to the time of enjoyment, they are to be construed as applying to the latter. *Eldridge v. Eldridge*, 9 Cush. (Mass.) 516.

Where the devise is to the remainderman "from and after" or "after" or "at" or "on" the death of the life tenant, or words of like import are used, the authorities quite generally declare that such words relate to the time of enjoyment, and that the remainder is vested. *Gingrich v. Gingrich*, 146 Ind. 227 (45 N. E. 101); *Hersee v. Simpson*, 154 N. Y. 496 (48 N. E. 890); Page on Wills, Sec. 659. This rule was applied in *Shafer v. Tereso*, 133 Iowa 342, and *Jonas v. Weires*, 134 Iowa 47. See *Haviland v. Haviland*, 130 Iowa 611, and *Ducker v. Burnham*, 146 Ill. 9 (37 Am. St. 135). The uncertainty as to whether the remainderman will live to come into actual possession does not make the remainder contingent, for that is an uncertainty which attaches to all remainders. It is not the certainty of possession or enjoyment which distinguishes the vested remainder, but the certainty of the right to future enjoyment if the remainderman lives until the life tenancy terminates. *Archer v. Jacobs*, 125 Iowa 467. The language of wills varies so greatly that little aid is obtained by comparison, and all we can hope to do is to apply the canons of construction established by long experience as accurately as may be; and in so doing, we have reached the conclusion that time was not of the essence of the gift, but had reference to the enjoyment, and that the remainder vested on the death of the testator.

IV. As said, the children of William contend that, if the remainder did vest in him, it was divested by his death

before that of said widow, and that thereupon the estate passed to the issue of William then surviv-

**4. WILLS: construction: words of substitution: "or have issue".**

ing. This necessarily depends on the significance to be accorded the words "or have issue" in the last clause. The argument in their behalf necessarily proceeds upon the theory that these are words of substitution. Were they employed in connection with others purporting a gift or intention to give, there would be some ground for such an argument. But they are used in defining when and under what circumstances the remainderman shall come into the enjoyment and possession of the property. This is to happen on the death of the life tenant on either of two conditions: i. e., if the remainderman William outlive her, or if the said William have issue; that is, surviving issue. If there be any issue at that time, the estate in the land becomes complete by the termination of the life estate.

Appellees argue that the words "have issue" relate to the fact of having had issue, whether any survive or not; and in numerous testaments, the context has been such as to warrant decisions so holding. Others are construed to have reference to issue surviving, depending on the context or form of expression. Of course, if William were dead, he could not personally take over the possession and enjoyment of the remainder, but his heirs or legal representatives might do so in his stead. The design of the testator seems to have been that, after the life estate, the farm should pass to his descendants, either children or their issue. This appears from the defeasance clause, as well as that under discussion. Conditions are met if there be issue, even though the remainderman himself be not living. The pertinent inquiry was not who or how many of the issue there were, but as to the fact of there being issue, and, if there were, the estate passed under the laws of inheritance from William; otherwise, to the living children of testator or their issue. If the words "or have issue" be not so construed, they are meaningless.

One of the accepted canons of construction is that all the words of a will be given effect, if possible; for, if not having some purpose, probably they would not have been inserted.

**5. WILLS: con-struction: de-feasance clause: mani-fest omission.** Some significance is claimed for the word "but", following these words, as being opposed to what precedes. As language was not employed in a technical sense or with much regard to the ordinary meaning of words, a design to use connectives in strict accuracy cannot well be attributed to the testator. He could not well have intended that the right to enjoyment and possession should pass to the remainderman, and at the same time that the estate be defeated by the condition subsequent, which directs that, if testator's widow "survive one or both of said children, then the share that would otherwise have gone to such child shall be inherited in equal shares by the remaining brothers and sisters living or having issue". As the heirs of William acquired an estate in fee under the prior provisions of the will,

**6. WILLS: con-struction: grant of fee: repugnant clause: effect.** this must be treated as repugnant thereto and disregarded (Section 684, Page on Wills); or else the condition that one or both of the children died without issue must be implied as a part of the defeasance clause. On reading the several clauses of the will, one cannot well escape the inference that, in addition to outliving either or both children, such one or both must not have left issue surviving, was inadvertently omitted from the defeasance clause. The entire clause is to be construed as a whole, and, when this is done, little doubt remains as to the intention of the testator, which, after all, must control. Whether the defeasance clause be regarded as repugnant to the previous completed gift, however, or the necessity of no issue surviving be implied in the defeasance clause, is quite immaterial; for, in either event, the result is that the heirs of William take the undivided 7/12 of the land in controversy.

What we have said disposes of the appeal of the surviv-

ing children of the testator. They were to take only upon the operation of the defeasance clause; and, as the fee with the right to possession and enjoyment passed to the heirs of William on the termination of the life estate, it never became effective.

The decree of the trial court is—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.