HOWARD S. WILLIAMS, Appellee, v. MAURICE CHAUNCEY WILLIAMS et al., Appellants.

**REMAINDERS: Vesting Conditioned on After-born Children.** Testator, 1 after devising a life estate to a son, provided: "After the death of my son, I devise said premises to the legitimate children of my said son and the descendants of any child then dead." Conceding, *arguendo only,* that the remainder vested instantly upon the testator's death in the son's children then in being, such vesting was conditional only,—was subject to being opened to let in after-born children of the son.

**REMAINDERS: Merger of Life Estate and Fee—Involuntary Merger** 2 Will Not Defeat Contingent Remainderman. The principle (now abolished by Sec. 10046, Code of 1924) that, if a life tenant *voluntarily* relinquished his life tenancy to a conditionally vested remainderman in fee, such relinquishment wholly defeated a contingent remainder, because of the merger of the life estate in the fee, will not be applied when the relinquishment by the life tenant is *involuntary*: i. e., under an execution sale against the life tenant.

LIMITATION OF ACTIONS:  Adverse Possession—Remainderman Ac-
3   quiring Life Estate Under Involuntary Sale.  A conditionally vested
    remainderman who acquires the life tenancy under an execution sale
    against the life tenant, will, so long as the former life tenant lives,
    be held to hold the premises as a life tenant, and not adversely
    to the other remaindermen.

REMAINDERS:  Remainderman May Not Acquire Tax Title.  A re-
4   mainderman may not acquire a tax title and avail himself of it
    against his fellow remaindermen.

Headnote 1:  40 Cyc. p. 1480.  Headnote 2:  21 C. J. p. 1007 (Anno.)
Headnote 3:  21 C. J. p. 973.  Headnote 4:  21 C. J. p. 997 (Anno.)

*Appeal from Cass District Court.*—J. B. ROCKAFELLOW, Judge.

FEBRUARY 20, 1925.

REHEARING DENIED JUNE 25, 1925.

ACTION in equity, to quiet title.  Decree as prayed.  The
defendants Maurice Chauncey Williams and wife and Frank D.
Williams and wife appeal.—*Reversed.*

*Willard & Buxton,* for appellants.

*Swan, Clovis & Swan,* for appellee Howard S. Williams.

*B. U. Wood,* for the remaining appellees.

PER CURIAM.—This is an action in equity, to quiet title to
the west half and the southeast quarter of Section 12, Township
74, Range 34, Cass County, Iowa.  Appellees Howard S. Wil-

1. REMAINDERS:
vesting condi-
tioned on after-
born children.

liams, Owen H. Williams, Stella M. Williams,
and Cherry E. Merritt, and the appellants
Maurice Chauncey Williams and Frank Darrell
Williams, are the children of Owen C. Williams, to whom his
father, Horace P. Williams, devised a life estate in the above
described real estate, with remainder to his children, as follows:
"* * * To have and to hold the same for and during his
natural life, and after the death of my said son, I give and
devise the said premises to the legitimate children of my said
son and the descendants of any child then dead, intending that

the descendants of any child shall together take a child's part, * * *.''

Appellees are the issue of the life tenant and Ida R. Williams, and appellants are the issue of the life tenant by a subsequent marriage. All of appellees were in being at the time of the death of the testator, which occurred in Cook County, Illinois, in 1881. Maurice M. was born August 30, 1895, and Frank D., January 15, 1897, at Dexter, Kansas, where they have always resided. The controversy is, therefore, between half brothers and sisters.

Ida R. Williams, the mother of the appellees named above, obtained a decree of divorce from her husband, Owen C., on February 4, 1884, in Cass County, Iowa. The decree gave her the life estate of her husband in the above described real estate as alimony. On the 24th day of July, 1885, said life estate was sold at sheriff's sale upon an execution against both Owen C. and Ida R. Williams, to L. L. DeLano, to whom a sheriff's certificate of purchase was issued. Presumptively, this certificate was later assigned to the appellees, as a sheriff's deed, conveying said life estate to them jointly, was executed by the sheriff of Cass County, July 5, 1886. Later, deeds conveying their separate interests in said land were executed to the plaintiff, Howard S. Williams, as follows: November 12, 1906, by Owen H. Williams and wife to Cherry E. Merritt, Myrtle S. Williams, and the plaintiff jointly; December 22, 1906, by Cherry E. and Stella M. Merritt; February 25, 1907, by Ida R.; December 22, 1915, by Owen H. and wife; February 7, 1918, by Myrtle Williams, wife of Owen H., to Howard S. and Gertrude Williams jointly. All of the above conveyances were by quitclaim, except the one of December 22, 1906, which, in form, is a warranty deed, but which purports only to convey the undivided interest of the grantors. On February 5, 1907, the treasurer of Cass County executed a tax deed conveying all of the land in controversy to Owen H., Stella M., Howard S., and Cherry E. Williams jointly. This deed was based upon a tax sale that had been canceled of record, many years previous to the issue of such deed.

Appellee relies upon three propositions to sustain the decree of the court below: (a) That, by the terms of the will of Horace

P. Williams, the children of the life tenant in being at the time of his death, took a vested remainder in the property; (b) that the contingent right of Maurice Chauncey and Frank Darrell Williams to share therein upon coming into being was destroyed by the prior merger of the life estate with the fee in plaintiff; and (c) adverse possession. On the other hand, appellants assert that the remainder to the children of the life tenant is contingent upon survivorship; and that, as the life tenant is still living, no estate has yet vested in them. They also deny that their rights are, in any event, barred by the statute of limitations.

It will be noted from the foregoing statement that it is vital to plaintiff to show that the four children of the life tenant in being at the time of the death of the testator then took a vested remainder, and not a contingent one. It is not vital to the defendants to show that such remainder was contingent, and not vested; though a finding that such remainder was contingent would be fatal to plaintiff's theory of recovery.

The arguments of the contending parties have been devoted largely to the question whether the remainder devised was a vested or only a contingent one. On the question presented in such form, the members of this court are not fully in accord. Our want of accord, however, applies only to the ground upon which the final decision should rest, and not upon the final result itself. We are all in accord that the result must be a dismissal of the plaintiff's petition, and therefore a reversal of the decree below.

If the remainder should be deemed a contingent one, this would necessarily defeat the plaintiff; and he does not contend otherwise. If the remainder should be deemed technically vested, it could be so deemed only in a qualified sense. It could be deemed to be vesting only in a class, and in the members of such class in being, subject to the rights of after-born children, if any. We are agreed that this is the utmost contention that could plausibly be made in support of the theory of vested remainder, though we are not agreed upon the contention itself. This latter theory is consistent with the claims of the appellants, as after-born children of the life tenant. It wholly negatives the claim of the plaintiff that the four children of the life tenant

*in esse* at the time of the death of the testator took title to the remainder to the exclusion of after-born children.

To avoid this result, the plaintiff appellee pleads a merger of the life estate and the estate in remainder, prior to the birth of the appellants. This is predicated upon the fact that the re-

2. REMAINDERS: merger of life estate and fee: involuntary merger will not defeat contin- gent remain- derman.

mainderman acquired the life estate through execution sale, against the life tenant. In support of this contention, special reliance is had on *Archer v. Jacobs,* 125 Iowa 467, as authority. Such doctrine of merger has never been re-

garded with favor, either by the courts or by the legislatures. Wherever it has come to legislative notice, it has generally been abolished. Its adoption by the courts has been exceedingly rare and exceptional. It is predicated upon the theory that a life tenant may, of his own volition, refuse or yield his life estate to the remaindermen, and that such yielding necessarily terminates the life estate, and with it the particular estate dependent thereon. In other words, it accelerates the right of possession of the remaindermen. But the doctrine implies an intention on the part of the life tenant to make such merger. It does not imply power in the remaindermen to accomplish a merger by compulsory process against the life tenant. No case is brought to our attention where the doctrine has been thus applied. Since the decision in *Archer v. Jacobs,* supra, the doctrine has been abolished in this state by legislative act. Section 10046, Code of 1924. We are not, therefore, disposed to extend the doctrine one whit beyond the pronouncement in the *Archer* case, though it be true that the legislation in question is not operative upon this case.

This holding operates also against the plea of the statute of limitations. The possession of the plaintiff and his grantors must be deemed referable to the life estate which they acquired

3. LIMITATION OF ACTIONS: ad- verse possession: remainderman acquiring life estate under involuntary sale.

under process. The plaintiff has at all times been entitled to hold as life tenant, and will be so entitled during the lifetime of his father. His possession, therefore, has not been adverse

to the remaindermen in a legal sense. Nor has anything occurred which would legally amount to an ouster, or start the running of the statute of limitations.

Nor is his tax deed available to him as a source of title. As life tenant, he was chargeable with the duty of paying the taxes. He may not predicate upon his own default in the pay-

4. REMAINDERS: remainderman may not acquire tax title.

ment of taxes an adverse title in himself. His expenditure in the tax purchase will be deemed in equity a payment of the taxes *pro tanto*. Indeed, his tax deed purported to be issued pursuant to a certificate of tax sale which had been previously canceled as void.

It is our conclusion that the decree for plaintiff quieting his title must be reversed, and plaintiff's petition dismissed as to the appellants, but without prejudice to any right of the plaintiff's under the decree of the district court as against the nonappealing defendants. Nor can any affirmative relief be extended to the appellants, for the reason that their ultimate rights must await determination upon the death of their father.—*Decree reversed.*